CHARLES B. BRYANT & another *vs.* BIGELOW CARPET COMPANY & another.

Suffolk.   June 30. — Oct. 17, 1881.   FIELD, J. did not sit.   ALLEN, J., absent.

The declaration in an action of tort against a mill corporation and a railroad corporation alleged that the plaintiff was the owner of a parcel of land with buildings thereon; that the mill corporation, in order to form a reservoir for its own use, constructed and maintained a dam across a natural stream, whereby water was dammed up and accumulated, which flowed back into a pond; that the railroad corporation constructed an embankment for its railroad through said reservoir, and between the dam of the mill corporation and the plaintiff's land, said embankment being solid, except that two small culverts were inserted in it to permit the flow of water from one side of the embankment to the other; that the natural banks of the pond near the plaintiff's land were not of sufficient height to hold the waters of the pond as raised by the dam and the embankment,

and the mill corporation raised the banks so that they were higher than the raceway of the dam over which the surplus water passed; that the embankment was carelessly constructed and maintained by the mill corporation, and was insufficient in height and strength; that the culverts built by the railroad corporation were carelessly and improperly constructed, and were insufficient in size and improperly placed, so that they would not permit the water to pass freely through the embankment, so as to pass over the raceway of the dam; that both the defendants had knowingly and carelessly permitted said culverts for a long time to be partially filled up with sand and stones, and had knowingly and carelessly permitted deposits of sand and other material to accumulate near the entrances to and exits from said culverts, whereby they had become choked and in a great measure filled up and insufficient to permit the water to pass through; that, in consequence of said dam of the mill corporation and the ill-placed and insufficient culverts, and the choked up condition thereof, as well as of the entrances and exits thereof, the waters on the side of the railroad embankment nearest to the plaintiff's land were on a certain day, in a season of rain, raised to a great height, and higher than the raceway of the dam, and were kept and maintained by both defendants negligently and at an improper and dangerous height; in consequence of which, and of the careless manner in which the embankment on the shores of the pond was maintained, the waters broke through said embankment and washed away the plaintiff's buildings. *Held*, on demurrer, that the declaration set forth a good cause of action against both defendants.

A corporation authorized by the Legislature to construct and maintain a railroad or a mill-dam is liable in an action of tort to a person injured by the negligent construction of its railroad or dam.

A railroad corporation, authorized to construct its railroad across a pond of a mill corporation, through which a natural stream flows, is bound to build its road in such a way as will allow, not only the water of the stream to pass through, but also the water which has been accumulated by the dam of the mill corporation.

If an injury is caused by the combined acts of negligence of two corporations, a joint action may be maintained for the entire injury against both.

TORT against the Bigelow Carpet Company and the Worcester and Nashua Railroad Company. The declaration, as amended, alleged that the plaintiffs were seised in fee and were in possession of a certain parcel of land, (described by metes and bounds,) in Clinton in the county of Worcester, together with the tannery, vats and other structures thereon; that the first-named defendant, in order to form a reservoir for its own use, constructed and maintained a dam across a small natural stream of water on land in Clinton, situated southerly of the plaintiffs' land, and not adjoining the same, whereby large quantities of water were dammed up and accumulated, which overflowed the land adjoining said natural stream, and flowed across other land into Mossy Pond, so called, in Clinton, which pond is situated westerly of the plaintiffs' land, and not adjoining the same; that

the last-named defendant located and constructed a railroad through said reservoir and pond, between Mossy Pond and other ponds connected therewith on the one side, and the dam of the first-named defendant and Clinton Pond, so called, which was situated on the line of the brook across which said dam was built, on the other side; that all said ponds, by the raising of water by means of said dam, became one pond and continuous reservoir of water, which was used by the first-named defendant as a motive power in running its mills situated below said dam, and southerly of said premises of the plaintiffs and of the railroad of the last-named defendant; that said last-named defendant constructed its railroad through said reservoir with an embankment of solid filling, which was in effect a dam, except that two small culverts were inserted in the same, for the purpose of permitting the flow of water from said ponds on the northerly side of said railroad into the Clinton Pond, on the southerly side thereof, and thence easterly through the dam of the said first-named defendant to the mills thereof, situated below said dam; that the natural banks of said Mossy Pond on the easterly side thereof, which were southwesterly of the said premises of the plaintiffs, were not of sufficient height to hold the waters of said pond as raised by the waters of the said dam and by the railroad of said last-named defendant; that the said first-named defendant raised the said banks by building an embankment of earth thereon, and maintained said banks and artificial embankment thereon, so that the height thereof was about the same as the height of the said dam, and higher than the raceway of said dam over which the surplus water passed; that the said embankment was carelessly constructed and maintained by the first-named defendant in an improper manner, and was insufficient in height and strength; that the said culverts built by the last-named defendant were carelessly and improperly constructed, and were insufficient in size and improperly placed, so that they would not permit, and were insufficient to permit, the flow of water freely through them from the northerly side of said railroad to the southerly side thereof, which was the only direction said water could run or was intended to run in order to pass over the raceway of said dam; that both said defendants had knowingly and carelessly permitted said culverts

for a long time theretofore to be partially filled up with sand and stones and other material, and they had knowingly and carelessly permitted large deposits of sand, rocks and other material to accumulate, and stumps of trees to exist, at or near the entrance to said culverts on the northerly side of said road, and at or near the exit of said culverts on the southerly side of said road, and on the land of both defendants, whereby the culverts and the entrances and exits thereof had become choked, and in a great measure filled up, and utterly insufficient to permit the water to pass through said culverts in the direction as aforesaid, and the waters were used to accumulate on the northerly side of said railroad to a great height, and higher than the waters of said pond on the southerly side of said railroad; that in consequence of said dam of said carpet company and of said railroad, and the ill-placed and insufficient culverts and the choked-up condition thereof, as well as of the entrances and exits thereof as aforesaid, the waters in said pond on the northerly side of said railroad were, in a season of rain, on March 26, 1876, raised to a great height, and far higher than the raceway of said dam, and far higher than they would have been raised had said culverts been properly constructed and located, and had they with their approaches been kept free and clear with due care, and said waters were kept and maintained in said ponds by both said defendants negligently and at an improper and dangerous height, in consequence of which height of the said waters, and the careless, improper and insufficient manner in which said embankment had been constructed and maintained on the easterly side of said Mossy Pond, said waters then and there broke through the said embankment and washed out the said embankment as well as the natural bank thereunder, and flowed violently through the same and across other intervening land in a northeasterly direction, until they reached the said premises of the plaintiffs, where they washed out and away the buildings, vats and other structures standing on the plaintiffs' said land, and belonging to the said plaintiffs, and destroyed all said building, vats and structures, and washed out and away and destroyed large quantities of leather, hides, machinery, tools, fixtures and other personal property on said land belonging to said plaintiffs.

The defendants filed separate demurrers to the declaration, assigning as cause of demurrer that the declaration did not state any cause of action, either jointly with the other defendant or severally. Both demurrers were overruled.

The first-named defendant then filed an answer containing a general denial; and alleging that the damage sustained by the plaintiffs, as alleged in the declaration, was occasioned by an extraordinary flood or freshet, such as could not reasonably be expected to occur, and was not occasioned by any act or omission on the part of the defendant; that the defendant could not foresee said flood or freshet, and could not guard against the consequences of the same.

The last-named defendant filed an answer containing similar allegations. It also alleged that the defendant was a corporation duly established by law and authorized to construct a railroad from Worcester to the line of the State of New Hampshire; that the acts complained of were done under said authority, and were necessary to said construction; and that the defendant had the right to maintain the structures complained of.

By agreement of parties, the case was referred to William G. Russell, Charles Allen and Nathaniel J. Bradlee, Esquires, as auditors, to state the accounts between the parties and make report thereof to the court. They subsequently filed a report in favor of the plaintiffs against both defendants, in the sum of $78,123.31, with interest from March 26, 1876. The case was then heard by *Morton*, J., and reserved for the determination of the full court upon the questions of law arising upon the pleadings and the auditors' report. The findings of the auditors and the questions arising thereon appear in the opinion.

*W. Gaston & J. C. Coombs*, for the plaintiffs.

*G. O. Shattuck & E. W. Hutchins*, for the Bigelow Carpet Company.

*E. R. Hoar & G. F. Hoar*, (*F. P. Goulding* with them,) for the Worcester & Nashua Railroad Company.

MORTON, J. In considering this case we must assume as established the facts found by the auditors. In order to intelligently discuss the questions of law raised, it seems necessary to make a statement of the principal facts.

Prior to 1845, the Clinton Company, predecessors in title to the Bigelow Carpet Company, owned and occupied for manufacturing purposes a mill-site and dam upon South Meadow Brook, in Clinton, at the easterly end of a pond, flowed by the dam, known as Clinton Pond. Northerly of Clinton Pond was another pond called Mossy Pond, which was a self-contained pond without inlet or outlet, and not connected with the waters of said brook nor in any way affected by the flowage of the Clinton Company. In 1845 the Clinton Company formed its plans, and late in that year or early in 1846 began operations to increase its power and capacity for storage of water by raising its dam to such height as to raise the water of Clinton Pond about thirteen or fourteen feet above its then level. For this purpose the company acquired by sundry deeds from time to time the ownership of, or rights of flowage over, the various parcels of land which would be covered by the water so raised, and established a water level or flowage line, with reference to which its dam, waste-way and other works were designed and constructed. The level or line so fixed was at the height of the top of a certain beam in the waste-way which was then constructed, beneath which were flash-boards for retaining or drawing down the waters of the pond to this level, and it was not intended or designed in the construction of the works of the Clinton Company that the water should, even in case of freshets, exceed this line by more than a few inches.

The construction of the dam at the height thus fixed would cause the waters of Clinton Pond to flow back into Mossy Pond, and, as the level of the flowage line established as above stated was about seven or eight feet above the level of the natural bank of Mossy Pond at its northeasterly end, would cause the water so raised to flow over that bank and down a steep descent into and through a valley below, in which the tannery of the plaintiffs was situated.

The Clinton Company, for the purpose of retaining the water at this point, purchased in April 1846 the land then forming the natural bank of Mossy Pond, and built upon it an embankment or retaining dam, hereinafter called Mossy Pond dam, the breaking of which caused the disaster which is the subject of this suit.

The new dam and waste-way of the Clinton Company were completed in the fall of 1847, and Mossy Pond dam was built in March 1847, at about the same time as the main dam; and the waters of Clinton Pond were so far raised in the spring of 1847 that boats could pass from it into Mossy Pond, but it was not flowed to its full height until 1848.

At about the same time when the Clinton Company was engaged in building its new dam, the Worcester and Nashua Railroad Company was engaged in laying out and constructing its railroad. Its act of incorporation was passed March 5, 1845; its route in Clinton was established by vote of its directors on November 7, 1846, and its location was filed March 4, 1848. The railroad, as located and constructed, crossed South Meadow Brook by an embankment of from twenty to thirty feet in height at a point just above where that brook entered Clinton Pond as it was prior to 1846, and thence ran easterly along the northerly side of that pond. This embankment was partly built in 1847, and completed in the spring of 1848. In building it, the railroad company constructed two culverts, designed for the passage of the water from the north to the south side of the railroad, and through which alone the waters of South Meadow Brook could pass, said embankment being otherwise of solid earth filling. These culverts were located at a point more than seventy-five feet westward from the point where the natural stream of the brook crossed the line of the railroad, and the bottom of the culverts was from two to three feet above the surface of the brook in its ordinary stage, and the natural earth at the entrance of the culverts, over which the water must flow to enter them, was two or three feet above the bottom of the culverts. The natural bed of the brook where it crossed the line of the railroad was filled up so that the water of the stream was not only diverted from its natural course, but raised above its natural level about five feet and accumulated to that height against the embankment of the railroad without any reference to or aid from the dam of the Clinton Company below. And this accumulation in time of high water would cause the water to flow over the northeast bank of Mossy Pond in its natural condition. The flowing of Clinton Pond by the new dam to the height of the established level of flowage raised the water to

the height of six or seven feet above the top of these culverts. These culverts were designed to act as submerged culverts, and were constructed in view of, and as adapted to, the plan of the Clinton Company to raise the pond by the new dam as it was in fact built; and, in regard to their location and construction, the constructing engineer of the railroad company consulted with the agent and hydraulic engineer engaged in constructing the dam of the Clinton Company, and they were determined upon such consultation, and the Clinton Company and the railroad company respectively built their works, railroad and culverts with the full understanding of the plans and purposes of each other, as those plans and purposes were actually carried out. The area of the water-shed furnishing water to the ponds on the north side of the railroad was about five times that of the water-shed furnishing water to the pond on the south side.

The Bigelow Carpet Company purchased the property of the Clinton Company on November 13, 1863, and has since used, as its reservoir and source of water power, the ponds on both sides of the railroad. On March 26, 1876, owing to a storm the two preceding days, there was a great accumulation of water in the ponds, the water in the pond north of the railroad standing more than two feet higher than the water in the pond south of the railroad. It finally rose so as to flow over the top of Mossy Pond dam, broke through and carried away the dam, and the waters were precipitated upon the plaintiffs' tannery situated in the valley below. For the injury thus done them the plaintiffs brought this suit against the railroad company and the Bigelow Carpet Company.

The auditors have found that the storm, and all the operations of nature attending it and contributing to raise the waters of Mossy Pond and to produce the disaster, were not extraordinary, but were such as might at any time be reasonably expected to occur, and which might and ought to be anticipated and provided for by reasonable precaution. They have also found that the defendants, and each of them, were negligent in the construction, maintenance and management of their respective works, and that the negligence of each contributed to the disaster and to the injury resulting therefrom to the plaintiffs.

The negligence attributed to the railroad company is, that it improperly constructed the culverts, so that they were likely to become filled with earth and sand, and no proper precaution was taken to prevent such filling; that they did become choked and partially filled so that they would not discharge the waters of Mossy Pond with sufficient rapidity to keep the waters of the two ponds upon a level; and that the company did not use due care to examine into their condition and to clear them out when obstructed.

The negligence attributed to the Bigelow Carpet Company is, that the Mossy Pond dam was improperly constructed and maintained to sustain water at any level higher than three or four feet below its top; that the company carelessly omitted to watch and observe the difference of the height of the water in the two ponds and the obstructed condition of the culverts; that it allowed the waters at its dam, on March 26, to rise to an elevation of about one foot above its established flow-line and thereby to diminish the flow through the culverts and to sustain the water in Mossy Pond at the high level which it attained; and that it failed to remove its flash-boards at the dam or to open its gates, as reasonable prudence required in order to prevent the accumulation of water which was reasonably to be expected.

We are of opinion that the findings of the auditors were based upon correct principles of law.

When a highway, railroad, mill-dam or other public work is authorized by the Legislature, such work is legal and all damages necessarily incident to such work must be recovered in the manner pointed out by the law authorizing it, and no action, as for a tort, will lie to recover such damages. But this rule presupposes that the work will be executed in a reasonably proper and skilful manner and with a just regard to the rights of others. And the distinction is well established that, if the corporation or person owning and constructing the work does not use due care in constructing and maintaining it, it is liable to an action of tort by any person injured by such negligence. *Rowe* v. *Granite Bridge*, 21 Pick. 344. *Estabrooks* v. *Peterborough & Shirley Railroad*, 12 Cush. 224. *Perry* v. *Worcester*, 6 Gray, 544. *Sprague* v. *Worcester*, 13 Gray, 193.

When the Nashua and Worcester Railroad Company located and constructed its railroad through Clinton, it found that the Clinton Company had made its plans and commenced the construction of its works by which the waters of Clinton Pond were to be raised so that Clinton Pond and Mossy Pond would be united and form one large pond into which South Meadow Brook flowed, having no outlet except at the dam of the Clinton Company. It located and built its railroad across this pond. As the water-shed on the north side was so much greater than the water-shed on the south side of the railroad, and as South Meadow Brook ran into the pond on the north side, the inevitable effect of a solid embankment would be to flow back the accumulating water and injure owners of property on the northeast side of Mossy Pond. This could be prevented, without unreasonable expense, by constructing suitable openings or culverts through the embankment. Common prudence and a just regard to the rights of others required that such openings or culverts should be provided so as to keep the water on each side of the railroad at the same level.

The railroad company recognized its duty to make such openings, and, acting in concert with the Clinton Company and with a knowledge of its plans and purposes, adopted the plan of two submerged culverts, as above described. Undoubtedly other plans were open to its choice, but the plaintiffs had no voice in the matter ; all that they could require was that the railroad should adopt and carry out some plan which would protect them from injury.

Having chosen to adopt this plan, it was the duty of the railroad company to use reasonable care in the construction and maintenance of the culverts, so that they would answer the purpose for which they were intended. The auditors have found that the plan was a good one, but that the culverts were improperly constructed, and that the railroad company did not use proper precautions to keep them clear and free from obstructions. They properly found that this was negligence which rendered the railroad company liable to the plaintiffs for any injury thereby caused to them.

The railroad company now contends that it was only required to build an opening or culvert sufficiently large to discharge

the waters of South Meadow Brook, and that, as the opening in the culvert on the day of the disaster was sufficient for this purpose, no negligence can be attributed to it. We cannot assent to this proposition. When it came to build its road it was its duty to take into consideration the existing state of the pond and of the Clinton Company's works and plans, and of the surrounding land, and to adopt all reasonable precautions to prevent injury to others. Such precaution would include a proper provision for the water which would accumulate in the northerly part of the pond on account of its greater water-shed as well as by the natural flow of the brook, after the plans of the Clinton Company in reference to which the culverts were made were carried out.

The railroad company contended before the auditors that " the measure of its obligation to the plaintiffs in regard to said culverts could not exceed its obligation to its co-defendant, the Bigelow Carpet Company, and that that obligation was fully performed if its culverts were capable of discharging and actually discharged, during the freshet of March 26, all the water which the Bigelow Carpet Company had the capacity to discharge at its dam by the gates and waste-way ; and that if the discharge of more water than was actually discharged through the culverts, in sufficient quantity to relieve the pressure upon Mossy Pond dam and prevent its destruction, would have occasioned the overflow of water over the bank of Clinton Pond at its lowest point into the bed of the railroad itself and thence into the premises of the Bigelow Carpet Company, the fact that the culverts discharged all the water which the Bigelow Carpet Company's gates and waste-way did or could discharge would show a full performance of the obligation on the part of the Worcester and Nashua Railroad Company, and exempt it from liability to the plaintiffs."

This claim is answered by the finding by the auditors of the facts, that if the culverts had been maintained and kept open during the freshet to their full capacity, as they were originally designed and constructed with the concurrence and approval of both defendants or their predecessors in title, and for the use of both, the Bigelow Carpet Company would have been. bound to provide for the discharge of all the water passing through

them, and might and it is to be presumed would have done so by opening its dam or otherwise.

From the relations between the defendants it is clear that the Bigelow Carpet Company would have been obliged to provide for the discharge at its dam of all the water passing through the culverts at their full capacity. If it failed to do so, it would be guilty of negligence towards the railroad company. Certainly it is no defence to the plaintiffs' claim for an injury caused by the undue accumulation of water on the north of the railroad, that, if the railroad company had performed its duty to the plaintiffs and let the water through the culverts, the Bigelow Carpet Company might have neglected to discharge the water over its dam and thus flowed it back upon the railroad. But further than this, the plaintiffs had nothing to do with the disposal of the water after it passed the culverts, and we are of opinion that the general ruling of the auditors was correct, " that in any event the fact that the passing through the culverts of all the water accumulated on the north side of the railroad would have worked injury to the premises of both or either of the defendants, constitutes no justification of the Worcester and Nashua Railroad Company in negligently accumulating such water, and is no defence to this action."

The same principles of law are applicable to the question of the liability of the other defendant, the Bigelow Carpet Company. If we assume that all its works including the Mossy Pond dam were within the scope and constructed under the authority of the mill acts, yet it was the duty of the company to use reasonable care in the construction, maintenance and management of its works to prevent injury to others. *Wendell* v. *Pratt*, 12 Allen, 464. It was its duty to use due care in observing the state of its pond, the condition of the culverts and of its retaining dam, and in the management of its flash-boards and of the water at its main dam, with reference to the strength and condition of the Mossy Pond dam. But the auditors have found that the company did not use proper care in observing the state of its pond and of the culverts, and that it kept on its flashboards at the main dam and accumulated in Clinton Pond the water to a height at least a foot above the flow-line it had established as the line of safety, and which the auditors find to be in

fact the line of safety in regard to the construction and strength of the Mossy Pond dam, when ordinary prudence required that it should open its flash-boards and gates so as to relieve the pressure upon the said dam. These were properly held by the auditors to be acts of negligence which rendered the company liable to the plaintiffs, as they contributed to cause the injury sustained by them.

In the view we have taken it is not necessary to consider whether the doctrine of *Fletcher* v. *Rylands*, L. R. 1 Ex. 265, and L. R. 3 H. L. 330, has any application to the case of either defendant. Taking all the findings of the auditors together, a case is presented in which each defendant was guilty of acts of negligence which contributed to cause an undue accumulation of water in the pond on the north side of the railroad, and an unsafe pressure on the retaining dam, which resulted in the disaster which injured the plaintiffs. The negligent acts of the two defendants combined produced the nuisance which injured them.

It is not the duty of the plaintiffs to attempt to apportion the degree of·negligence of each defendant, nor to determine whether the same injury would have happened to them from the negligence of one, if the negligent acts of the other had not co-operated. Having shown that they were injured by the joint or combined acts of negligence of the two, they can maintain an action against both, leaving the questions of their relative rights and liabilities to future litigation or adjustment between themselves. *Churchill* v. *Holt*, 127 Mass. 165. *Stone* v. *Dickinson*, 5 Allen, 29.

The demurrers taken by the defendants to the plaintiffs' declaration cannot be sustained. The declaration as amended states with substantial certainty the facts which entitle the plaintiffs to maintain their action.

The result of the whole case is, that all the several demurrers must be overruled, and that the plaintiffs are entitled to judgment against both defendants, according to the report of the auditors.          *Judgment for the plaintiffs.*