THE CHICAGO, KANSAS & NEBRASKA RAILWAY COMPANY v. GEORGE W. HOTZ.

RAILROAD COMPANY — *No Cattle-Guards — Negligence.* The defendant railway company failed and neglected to construct or maintain cattle-guards where its line of railroad entered and left an inclosed pasture. During the time of such neglect, the owner of the pasture attempted to keep his stock from straying by herding the same. One day the herder left the stock to go to dinner. While absent, a cow strayed away, got into a creek, and mired down. *Held,* If the creek was at a great distance from the pasture, or if the miring of the cow was something extraordinary and not to be expected, and it could not be said that the neglect of the railway company was the proximate cause of the loss of the cow, the company would not be liable therefor.

*Error from Meade District Court.*

THE facts appear in the opinion. · Judgment for plaintiff, *Hotz,* on April 11, 1889. The defendant *Railway Company* brings the case to this court.

*M. A. Low,* and *J. E. Dolman,* for plaintiff in error.

The opinion of the court was delivered by

HORTON, C. J.: This action was commenced by George W. Hotz before a justice of the peace of Meade county, to recover damages alleged to have been sustained by reason of the failure and neglect of the Chicago, Kansas & Nebraska Railway Company to construct and maintain cattle-guards where its line of railroad entered and left his land. A judgment was

rendered against the railway company before the justice, and an appeal taken to the district court. In that court, judgment was rendered against the railway company for $30. The company excepted to the judgment, and brings the case here. Upon the trial, the court gave the following instruction, among others, to the jury:

"If you should find from the evidence that the plaintiff used such inclosure for a cattle pasture, and that by reason of the refusal and neglect of the defendant to make proper cattle-guards at the points designated in the foregoing instructions, any of his cattle escaped from the pasture at the point where defendant's road enters such pasture, or at the point where defendant's road leaves such pasture, and wandered away from such pasture into a mire-pond, sink-pond, or slough, and there died, then it will be your duty to determine from the evidence the value of such animal or animals so dying, and return a verdict in favor of the plaintiff therefor."

The only evidence embraced in the record to which this instruction could in any possible manner apply is the following from the plaintiff below:

"Ques. Describe the land that you owned and possessed before the building of the Chicago, Kansas & Nebraska railway through this county. Ans. The northeast quarter of section 15, township 31, range 27 west.

"Q. Now state what improvements, in reference to buildings, fences and other things you had on this land before the Chicago, Kansas & Nebraska Railway Company built this line of road through this county. A. I had it fenced, and was using it for a pasture.

"Q. Describe what kind of a fence it was. A. It was a three-wire fence.

"Q. State what the Chicago, Kansas & Nebraska Railway Company did with reference to passing through that land while they were building their road. A. They cut the fence open and built the road through.

"Q. Did they leave it open? A. Yes, sir; they left it open.

"Q. When was the Chicago, Kansas & Nebraska railway built through this county, and over the land that you have described? A. They went through about the 1st of February, 1888, I believe.

"Q. Now, how long after the Chicago, Kansas & Nebraska Railway Company built through that field or close that you have described did they build any cattle-guards?  A. They put the cattle-guards in about the 1st of July.

"Q. Of what year?  A. 1888.

"Q. Now, Mr. Hotz, you may state to the court and jury in what particular way you were damaged by reason of the railroad's failure to build cattle-guards when entering your land and leaving it.  State all about it.  A. Well, I had to herd the cattle—that is, in the beginning; in the early spring I had to keep them in the corral, and had to feed them.  After my feed run out, I had to herd them in the pasture to keep them from going out.

"Q. Tell the court and jury all about it; how much herding you did.  A. Well, it took time to herd them from about the 1st of April to the 1st of July, and there was one cow that strayed out, and got into the creek and died.

"Q. Now, you may state the value of that cow.  A. She was appraised at $40.

"Q. State what was the value of that cow.  A. She was worth $30.

"Q. Now, Mr. Hotz, you tell the jury all about how that cow happened to stray out of your field and from the railway track, and why.  Tell all about that.  A. She strayed out on Sunday; the boy was herding the cattle and had to go home to dinner, and while he was at the house for noon the cow got out, and got into the creek and mired down."

Upon the evidence introduced, the instruction was misleading and erroneous.  The evidence does not show clearly that the cow escaped at the point where the railroad entered or left the pasture; but if it does, there is no evidence tending to show there was any pond or slough near or close by the pasture. The evidence is that the cow got out of the pasture and into a creek and mired there.  The words "mire-pond, sink-pond, or slough" were not used in the evidence.  There was no evidence showing where the creek was situated, excepting that it was outside of the pasture.  It might have been one mile, two miles, five miles, or further away.  The death of the cow in the creek might have been something extraordinary and not to be expected; this would be the case if the creek was a great or a considerable distance away from the pasture.  If the creek

was the proximate cause of the cow's death, then the railway company is not liable. (*Fales v. Cole* [Mass.], 26 N. E. Rep. 872.)

The judgment of the district court will be reversed, and the cause remanded.

All the Justices concurring.