THE CITY OF KANSAS CITY v. EUGENIA A. BRADY *et al.*

1. FORMER OPINION *Adhered to.* The former opinion in this case upon the questions of law involved is adhered to.

2. SPECIAL QUESTIONS—*Inconsistent Answers, Effect of.* Where the answers of the jury to special questions submitted to them are not only inconsistent with the general verdict but with each other as to material matters, no judgment can be entered, but a new trial should be ordered.

*Motion for Rehearing.*

THE material facts are stated in the original opinion, reported in 52 Kas. 297, *et seq.*, and in the opinion herein, filed May 5, 1894.

*True & True*, and *Littick & Littick*, for the motion.
*James M. Rees* and *K. P. Snyder*, contra.

The opinion of the court was delivered by

ALLEN, J.: A motion for a rehearing has been made in this case, and argued with much earnestness and at great length. It is now urged that the court mistook the facts and overlooked some of the special findings; and the correctness of the legal propositions enunciated in the original opinion herein, reported in 52 Kas. 297, (34 Pac. Rep. 884,) as applied to the facts in this case, is also challenged. The facts will be found in the report of the former decision. It is now urged that, though there is no special finding to that effect, the general verdict is, in effect, a finding that the north end of the part of the sewer built by the defendant city was 15 feet above and 100 feet west of the water course. We did not understand, on the original hearing of this case, that any question of the diversion of a natural water course from its accustomed channel was presented. The map on the first page of the brief of counsel for the defendant in error, with the accompanying statements, shows the sewer to have been located in the channel of the stream; and on page 6 of his brief the learned counsel says: "The water course at the place where it

was obstructed by the aforesaid grading was 40 feet deep and 150 feet wide between the tops of the banks. This channel was narrowed down to a four-foot sewer and then to a four-inch syphon." And this statement, in substance, is repeated in the brief. This court has a right to assume that counsel, in presenting their case, correctly state the facts and will not make unwarranted concessions. We do not, therefore, feel called upon to consider any question that might arise from a diversion of the water course from its channel, yet we do not see that the plaintiff would be affected by such diversion merely, and her damages, if any, would be the result of the obstruction of the water course. It is now strenuously urged that not only the evidence, but the findings of the jury, show an obstruction at the north end of the city's sewer, and stress is laid on this fact. It is urged that this alone is sufficient to uphold the judgment; but the case, on the original hearing, was not argued on any such theory, nor does the pleader who drew the petition in the case appear to have thought it of any importance, for the petition alleges specifically the falling down and closing up of the sewer on the Orchard Place Land Company's property, and the complete obstruction of the water course thereby. No mention whatever is to be found of any obstruction at the north end of the sewer.

Former opinion adhered to. With the legal propositions enunciated in the original opinion, as applied to the facts of this case, we are still satisfied. We then thought, and are still of the opinion, that some of the most important special findings are inconsistent with the general verdict, and that, taken as a whole, they do not support the judgment. After a reëxamination and further consideration of the findings, we are not satisfied with the order directing a judgment to be entered in favor of the city.

The seventy-second question is: "Was the sewer constructed by the city so much too small that, if open and free from obstruction, the surplus water it could not discharge would have set back 1,000 feet to plaintiff's property and overflowed it, at the time of the high water or flood when the

plaintiff's property was overflowed?" To this the jury an-
swered, "It might, but would not have remained long." In
rendering the former decision in this case, we thought this
finding not sufficiently explicit to be held as conflicting with
the other findings with reference to the same matter. We
have now reached the conclusion that this finding, being in
accordance with the general verdict, should not be wholly
ignored. As was indicated in the original opinion, if the
obstruction placed in Splitlog creek by the city and the in-
sufficiency of the culvert constructed by it contributed ma-
terially to the overflow of water onto the premises of the
plaintiff, the city is liable. While this finding tends, per-
haps, to negative the idea of substantial injury to the plain-
tiff by reason of the smallness of the sewer, it implies that
some injury might have resulted from it. While the obstruc-
tion at the north end of the sewer was not alleged in the pe-
tition, and perhaps was not relied on at the trial, the one
hundredth and one hundred and sixth questions and an-
swers are as follows:

"Ques. 100. Was the north end of the city's sewer ob-
structed at any time? Ans. Yes."

"Ques. 106. Did said obstruction remain in said sewer
until the overflow occurred that injured plaintiff? Ans.
Yes."

These questions were asked by the defendant city, and
therefore are not to be wholly ignored. The jury do not ap-
pear to have based their general verdict on these findings but
they tend to establish a liability on the part of the city.

The seventy-fifth, seventy-sixth, seventy-seventh, seventy-
eighth, eighty-second, eighty-third and eighty-fourth findings
seem to show the facts and line of reasoning on which the
jury founded their general verdict, and are as follows:

"75. Did the city do any act toward, or have any connec-
tion with, the construction of the embankment and sewer on
the land of the Orchard Place Land Company, which were
constructed after the city had built its embankment and sewer
for the purpose of grading Tenney avenue? Yes.

"76. If you answer the preceding question in the affirmative, then state all the acts the city did, and what connection it had with the construction of said embankment and sewer on the land of the Orchard Place Land Company? In locating the sewer and permitting the Orchard Place Land Company to attach their sewer with the city sewer.

"77. Was the building of the embankment and sewer on the lots of the Orchard Place Land Company, after the city had completed its grading of Tenney avenue, a separate and independent act of the Orchard Place Land Company? Yes, with the exception of the locating and building of the sewer.

"78. If the sewer built by the city was not of sufficient size, state whether the plaintiff was injured by such defect. No."

"82. Were the injuries suffered by the plaintiff from the overflow of her premises partly caused by acts and omissions of the city, or by separate and independent acts of the Orchard Place Land Company? Yes.

"83. State whether the injuries suffered by the plaintiff from the overflow of her premises were caused by a defect in the size of the sewer built by the city, which defect prevented the water from being carried off fast enough to prevent an overflow, or whether said injuries were caused by the fact that all flow of water through the sewer was obstructed and prevented. It was the result of the obstruction in the sewer.

"84. State whether the injuries which the plaintiff suffered by the waters standing for a long time on her premises were caused by the sewer being too small, or by all flow of, through the sewer being obstructed. By obstructions in the sewer."

These findings were regarded before, and are now, as placing the plaintiff's recovery on the ground of the city's participation in planning the sewer across the Orchard Place Land Company's land, and the obstruction to the flow of water caused by the falling in of the work. As we then held, these facts would not sustain a judgment against the city; but if, on the retrial it shall be shown that the action of the city in the construction of its sewer contributed in a substantial degree to the plaintiff's injuries, and that it is impossible to separate the injury resulting from the wrongful act of the city, if any,

from that of the Orchard Place Land Company, both would be liable for the whole damage.

In this case, the court submitted to the jury 119 questions at the instance of the city, 8 more at the request of the Orchard Place Land Company, and 10 for the plaintiff. We think this was an unnecessary and unreasonable cross-examination of the jury. Many of the questions are but repetitions with a slight change of wording. While it is the duty of the court to submit all pertinent questions asked, it is not necessary that repetition be permitted, nor that trivial questions be submitted. One-tenth the number of questions this jury were required to answer, properly framed, would elicit an answer as to every material fact controverted, and would be far more conducive to the orderly administration of justice than so great a number.

The order heretofore entered, directing judgment on the special findings for the defendant, will be set aside, and the cause remanded for a new trial.

JOHNSTON, J., concurring.

HORTON, C. J.: When this case was first here for decision, on account of the prolixity of the special questions submitted and answered by the jury, I did not understand the facts as clearly as when presented upon the reargument. The 137 special questions answered by the jury tend only to complicate the legal questions involved. After a careful reëxamination of the record and the authorities, a rehearing, in my opinion, should be granted, and the judgment affirmed. The undisputed facts show that the city of Kansas City, in grading Tenney avenue across Splitlog creek, a natural water course, to the height of 40 feet and to the width of 60 feet, filled up and obstructed the creek so that water could not flow in its usual channel. As a substitute for the natural water course, the city constructed, as an artificial channel, a 4-foot drain through the grading or embankment, and extended the same 50 feet on the lots of the Orchard Place Land Company. That company continued the drain of the same size through

its own property. The city paid for the drain through the avenue, and for 50 feet south thereof, and the Orchard Place Land Company paid for the balance. In May, 1889, the premises of plaintiff below were overflowed and seriously injured, because the drain of the city became obstructed on account of the falling in of the drain built by the Orchard Place Land Company, which joined the city's drain.

A city, in grading its streets, is bound to keep open a sufficient channel for a natural water course, so as not to obstruct in the least the water flowing therein. (*City of Atchison v. Challiss*, 9 Kas. 604.) After the city, in grading Tenney avenue, obstructed Splitlog creek, it ought to have provided a sufficient artificial channel, by drain or otherwise, to carry off the water flowing or likely to flow therein. The city had no right to obstruct the creek at Tenney avenue so as to cause the water to flow back. If it did so, it was in duty bound to furnish a new and sufficient channel for the water. I do not think it performed its duty in constructing a drain upon the private premises of the Orchard Place Land Company, if it did not retain control thereof so as to keep the drain wholly unobstructed. To me, it is no sufficient answer for the city to establish by proof that the injury to plaintiff's premises, caused by the overflow, was occasioned by the obstructions on the Orchard Place Land Company's property. This injury would not have happened if the city had not obstructed Splitlog creek at Tenney avenue. After it had caused such obstruction, it should have provided a sufficient drain under its own control, and kept it free and unobstructed, so as to carry off the water from the creek. It was observed in *Trust Co. v. Cuppy*, 26 Kas. 754, that

"Whether the plaintiff had any cause of action at the time of the building of the culvert or not, it is not necessary in this case to determine, for the building of the culvert is not the *gravamen* of this action. The foundation of this action is the obstruction of a natural water course, causing damage to the plaintiff; and the cause of this obstruction was the filling up of the natural channel of such water course. The building of the culvert did no injury. It assisted as far as it could in

avoiding the injury; and if it had been made about four times wider than it was, probably the injury would not have happened. The defendants had a right to construct and maintain their culvert, but it should have been a much larger culvert; and they had no right to fill up the natural channel of the water course, or to obstruct its waters as they did." See, also, *Bryant v. Carpet Co.*, 131 Mass. 491.