THE BANK OF TOPEKA *et al.* v. JOHN G. MILLER *et al.*

**No. 11104.**

1. DISCRETIONARY CERTIFICATION—*brings case to Supreme Court for review of all errors reviewable by Court of Appeals.* Cases brought from the Court of Appeals to the Supreme Court by discretionary certification are reviewed *de novo*, and every exception or point that was available in the Court of Appeals will be available in the Supreme Court.

2. MOTION FOR NEW TRIAL—*presumed filed at term, where close of term not indicated by record and proceedings appear continuous.* The mere absence from the record of a positive and affirmative statement that the motion for a new trial was filed during the term at which the verdict was rendered, does not warrant the presumption that it was filed at another and different term of court; but where the proceedings appear to be continuous, and the various steps in the case appear to have been taken in regular order and from day to day, or within the time required by law, and there is nothing to indicate the conclusion of one term and the commencement of another, the inference will be that all the proceedings were had at the same term of court.

3. ———— *court's duty to grant where jury's special findings contradictory and some of them conflict with the verdict.* Where special findings returned by the jury are contradictory and

| 59 | 743 |
| 60 | 229 |
| 59 | 743 |
| 67 | 224 |
| 59 | 743 |
| 80 | 107 |

some of them in conflict with the general verdict, neither party is entitled to a judgment, but it is the duty of the trial court upon application to grant a new trial.

Error from the Court of Appeals, Northern Department. Opinion filed November 5, 1898. *Reversed.*

Action by John G. Miller & Co. against Wolfe & Son, A. H. Vance, D. A. Harvey, J. T. Clark, the Bank of Topeka and the Central National Bank of Topeka, to recover two lots of merchandise alleged to have been converted by the defendants. The petition alleged the sale of goods by Miller & Co. to Wolfe & Son, who were engaged in business in Guthrie and Oklahoma City, in Oklahoma, upon representations of the latter as to their credit, which were untrue, and that relying on these representations they sold goods to Wolfe & Son of the value of $2409.25; that the goods were fraudulently obtained and afterward transferred by mortgage to the Bank of Topeka, the Central National Bank, and others, without consideration; that the parties to whom the goods were transferred obtained possession of the same, and that upon demand they had refused to deliver them to Miller & Co.

The defendants in the trial court, other than Wolfe & Son, set up a mortgage executed by Wolfe & Son and alleged that it was made and the goods obtained to secure the payment of money loaned to Wolfe & Son in good faith and without any knowledge of the fraud charged by Miller & Co. against Wolfe & Son.

At the trial proof was offered tending to show that Wolfe & Son misrepresented their financial condition to Miller & Co. and that goods were sold to them on the strength of the misrepresentations; but it was admitted that these misrepresentations were made without the knowledge of the other defendants. It was further admitted that the chattel mortgage re-

ferred to was executed to secure a *bona fide* indebtedness of Wolfe & Son to the various mortgagees named in the mortgage, and that no part of it had been paid ; that the indebtedness had been incurred prior to the execution of the chattel mortgages, and that there was no new or other consideration for the mortgage.

Evidence was offered tending to show that the mortgagees obtained possession of the goods about December 14, 1890, and afterward placed W. L. Harvey in possession of the store at Guthrie, while Ed. Scott was placed in possession of the store at Oklahoma City ; that on December 19, 1890, the goods in the Guthrie store were seized upon a writ of replevin by the United States marshal, and that on the same day writs of attachment were levied on the stock by the sheriff of Logan County ; that Harvey, as agent of the mortgagees, remained in the Guthrie store for several days, until he was finally forcibly ejected by the sheriff ; that soon after the United States marshal and sheriff had entered the store and levied upon the goods, demand was made on W. L. Harvey by Miller & Co. for the possession of the goods in the Guthrie store, and a day or two later demands were made upon the mortgagees at Topeka, but no goods were surrendered or delivered in response to these demands. There was also testimony tending to show that it was not within the power of the mortgagees to deliver the goods at the time the demands were made.

The jury returned a verdict for Miller & Co. against the Bank of Topeka and the Central National Bank for the sum of $344.68, and also made certain special findings of fact, to the effect that there were goods claimed by the plaintiff in the store of Wolfe & Son at the time the chattel mortgage was made and possession taken thereunder to the value of $1400 ; that demand was made upon the Central National Bank and

also upon the Bank of Topeka, and that these demands were refused, the banks claiming to have a chattel mortgage on the goods and a right to the possession of the same thereunder; that a demand for the goods was made upon W. L. Harvey, the agent of the banks, and that he also refused the demand, claiming that the mortgage under which he held was a valid instrument. The following additional findings were made:

"18. Could plaintiffs, even with the consent of the sheriff of Logan County, and the U. S. Marshal, have gotten any of their goods from the Wolfe & Son store at Guthrie without the consent of W. L. Harvey, or of the mortgagees, defendants in this cause, for whom he was acting? A. No.

"19. Was Ed Scott, the authorized agent of defendants, Central National Bank, Bank of Topeka and J. T. Clark, to hold possession of the store of Wolfe & Son at Oklahoma City under the chattel mortgage in question, on December 20 and 23, 1890? A. Yes.

"20. Did the plaintiffs make demand upon said Ed Scott for the goods in controversy on December 20 and 23, 1890? A. Yes.

"21. If you find there were any of the goods in controversy in the Wolfe & Son store at Guthrie on December 19 to December 24, 1890, then state, as nearly as you can, the value of such goods in said store at that time. A. $1100.

"22. If you find there were any of the goods in controversy in the Wolfe & Son store at Oklahoma City on December 19 to December 24, 1890, then state the value, as nearly as you can, of such goods in said store at that time. A. $298.

"23. Did anyone of the defendants ever consent, or were they ever willing, after the taking of their chattel mortgage and before the beginning of this action, for plaintiffs to retake any of the goods from the Wolfe & Son stores? A. No.

"23½. (Submitted by defendants). Did defendants, at the time of first demand made by plaintiffs for goods, or at any time thereafter, have possession or control of the goods in controversy? A. No, in

reference to those at Guthrie. As to those at Oklahoma City, yes."

The verdict was rendered on June 24, 1893, and on June 27, 1893, Miller & Co. filed a motion to set aside the general verdict and also special finding No. 23¼, claiming that the finding mentioned was wholly unsupported by the testimony and inconsistent with the other special findings, and to give judgment upon the special findings against the banks in the sum of $1400, with interest thereon from December 22, 1890.

The defendants below filed motion for a new trial on the same day, and afterward the motion of Miller & Co. was sustained, and judgment was rendered for the principal sum of $1400, but interest upon that sum was denied. The motion for a new trial filed by the banks was denied and they instituted proceedings in error in the Court of Appeals for a reversal of the judgment, alleging numerous errors. That court held that the record did not show that the motion for a new trial was filed at the term at which the verdict was rendered and therefore refused to consider errors which occurred during the trial. *Bank of Topeka v. Miller*, 51 Pac. 964. On application the cause was certified to this court for review.

*Gleed, Ware & Gleed* and *Vance & Campbell*, for plaintiffs in error.

*Ellis, Reed, Cook & Ellis*, for defendants in error.

JOHNSTON, J. A preliminary question is raised as to the limits or extent of the review that may be had in cases coming to this court by discretionary certification. No limits are fixed by the statute authorizing certification or by the rule of court providing the methods of procedure in such cases. On the other hand, the statute in effect provides that when cases are brought to the Su-

1. Discretionary certification brings, what errors.

preme Court in that way, it has the same power and authority in reviewing and determining them that it would have had if such cases had been carried to the Supreme Court in the first instance. Gen. Stat. 1897, ch. 84, § 23. The statute plainly contemplates a review of the case *de novo,* and any exception or point which was available in the Court of Appeals will be available in this court.

The Court of Appeals held in this case, as it has in some others (*Dudley v. Barney,* 4 Kan. App. 122, 46 Pac. 178), that certain errors occurring during the trial could not be considered because the record did not affirmatively show that the motion for a new trial

2. Motion for new trial presumed filed in time.

was filed at the same term at which the verdict was rendered, and that unless there is an affirmative statement of that fact in the record it will be presumed for the purpose of upholding the judgment of the court below that the motion was filed at another and different term of court than the one at which the verdict was rendered. We cannot approve of this ruling. It rests upon a mere presumption which can have no force unless it is based on facts, and can never be indulged where the facts disclosed in the case are inconsistent with such presumption, nor where it is overcome by conflicting and stronger presumptions. Where the proceedings appear to be continuous and the various steps in the case appear to have been taken in regular order and from day to day, or within the time required by law, and there is nothing to indicate the ending of one term and the commencement of another, the natural inference is that everything was done at the same term of court. *Railway Co. v. McClure,* 58 Kan. 109, 48 Pac. 556. If the record showed that a long time had elapsed between the verdict and the filing of a motion for a new trial, or that before it was filed the

time had arrived for the commencement of another or different term of court in the same or another county of the district, there might be a basis for the presumption; but the facts in this case do not warrant the inference or presumption that another term of court had intervened before the motion was filed. The verdict was returned June 24, and the plaintiffs in error filed their motion for a new trial June 27, which was within the statutory time, and the defendants in error, who are insisting that it was not filed at the proper time, filed their motion for a new trial on the same day. It also appears that other steps were taken in the trial of the cause on the day on which the motions for a new trial were filed. On that day Miller & Co. filed their motion to set aside the general verdict and one of the special findings and asked the court to give them judgment on the remaining special findings. The motion was sustained in part by the court. It thus appears that the case was considered on its merits on the same day on which the motion for a new trial was filed, and nothing in the record or in the case indicates that the case had prior to that time been continued or reserved to another term of court.

Another consideration is that the court entertained the motion, and the ruling thereon implies a consideration of its merits. If it was not filed in time, it should have been dismissed, but the court denied the motion, and the denial implies a consideration. This inference is sufficient at least to overcome the presumption that the motion was overruled because it was not filed in time.

The action of the trial court in setting aside the general verdict, and in ignoring or setting aside special finding number 23½, which is to the effect that the defendants did not at the time of demand or at any time thereafter have the possession or control of

the goods demanded, cannot be sustained. That finding appears to be inconsistent with finding eighteen, and possibly other of the findings which the court deemed to be inconsistent with the general verdict; but while this inconsistency may have afforded grounds for setting aside the general verdict and granting a new trial, it did not warrant the court in overthrowing the general verdict and then rendering judgment on such inconsistent special findings. Finding 23½, which was ignored or set aside by the court, appears harmonious with the general verdict which the jury returned, but the court set aside the general verdict of the jury and substituted its own judgment based on contradictory findings. If the special findings were contradictory, and some of them in conflict with the general verdict, neither party is entitled to judgment, but it is the duty of the trial court to grant a new trial. *Shoemaker v. Railroad Co.*, 30 Kan. 359, 2 Pac. 517; *E. M. N. & S. E. Rly. Co. v. Maxwell*, 39 id. 651, 18 Pac. 819; *Latshaw v. Moore*, 53 id. 234, 36 Pac. 342. It cannot be successfully contended that the special finding was immaterial.

It appears that Wolfe & Son were merchants in Guthrie and Oklahoma City. They borrowed money from the banks and others, and subsequently, to secure these debts, which were admittedly just and honest, they executed a mortgage, and the mortgagees were given possession of the goods. Miller & Co. who had sold the goods to Wolfe & Son, did not demand the goods until attachments and other proceedings had been begun against Wolfe & Son, and in pursuance of writs which they held the officers had entered the stores and seized their goods. Notwithstanding the seizure, the mortgagees insisted upon the validity of their mortgage and were in the store at Guthrie a part of the time with the officers. Their agents how-

ever were finally ejected from the building, and the goods were sold under the levies which had been made by the officers. Miller & Co. brought their action against the banks, and other defendants, alleging the transfer of the possession of the goods to the defendants, the demand for the possession, and the refusal of the demand, and also the conversion.

The defendants answered with a general denial and alleging that the mortgage had been taken by them to secure an indebtedness, that the goods were transferred under the mortgage, and that the goods were afterward taken from the defendants under certain judicial proceedings in Oklahoma. Considerable proof was offered as to the possession of the goods when the demand was made, and much of it tended to show that prior to the making of demand the goods had been actually seized and possession taken by the United States marshal and the sheriff under writs which they held, and that at no time thereafter did the mortgagees have any real or actual possession or control of the goods. There is some confusion and conflict in the testimony as to who was actually in possession of the goods at Guthrie from December 19 to December 24, but it appears that Scott, who represented the mortgagees, was in possession of the store at Oklahoma City during that time.

The court tried the case throughout on the theory that to constitute a conversion the defendants must have had possession of the goods, and must upon demand have refused to surrender posses-

3. Court's duty to grant new trial, when. sion of the same. As further indicating the theory upon which the case was tried, the court instructed the jury as follows :

"In order to entitle the plaintiffs to recover in this action, they must prove that at the time they made the demand claimed to have been made in this case of the defendants, that at that time the defendants had

the possession or control of the goods in controversy; for if at that time they did not have control or possession of the goods, and did not afterward acquire them, then they would not be liable."

This must be treated as the law of the case, and in pursuance of this instruction the jury specifically found that the goods in the Guthrie store of the value of $1100 were not in the possession or control of the defendants at or after the time when the first demand was made for them. The finding, therefore, appears to be based on testimony and to be within the rule of law declared by the court, and it is not easy to say that it is immaterial or that the general verdict, which is consistent with it, should be set aside for any other reason than that the findings themselves were contradictory. As the case was in fact tried, the matter of possession was an important issue, and the testimony thereon was submitted to the jury upon an instruction the meaning of which is not in doubt. Involved in that issue and the finding thereon is the claim of $1100, nearly four-fifths of the amount for which judgment was rendered. Under the rule of law declared, the taking of the property by the mortgagees was not tortious, nor the withholding of possession a wrong against the plaintiffs below until there was a demand and a refusal; and there was no conversion then, if the mortgagees had no possession of the property actual or constructive and could do nothing toward giving plaintiffs possession of the same. The property was not concealed, and the plaintiffs had full opportunity to know who was in control of the same, and that it had been seized by the officers of the law on legal process. A demand on those who had control and the power to give possession of the property would have been more reasonable, and probably more effectual, than one upon those from whom

the property had been previously and forcibly taken. There is no claim of a conspiracy between the mortgagees and the officers, or that they occupied any other than antagonistic relations, and there is nothing to show that the mortgagees ever afterward came into possession of the property or received any benefit from the disposition of the same.

Our conclusion is that the court could not ignore or set aside an important special finding, and then render judgment on the remaining findings contrary to the general verdict.

The judgment will be reversed and the cause remanded for a new trial.