THOMAS WOOD, *Appellee,* v. THE UNION PACIFIC RAIL-
ROAD COMPANY, *Appellant.*

No. 17,877.

SYLLABUS BY THE COURT.

1.· DAMAGE TO STOCK—*Right of Way—Railroad "Cattle-guard Act."*  A and B own farms separated by a public highway. A railroad runs across both farms.   The horses of A escaped from his premises, went across the highway, over a cattle guard and upon the railroad right of way where they were. killed by a train.   Such cattle guard is located where the railroad enters the fenced land of B.   *Held,* that the railroad company is not liable to A by virtue of any provision of the cattle-guard act of 1869.   (Gen. Stat. 1909, §§ 7008-7010.)

2. JURY—*Conflicting Findings—Inconsistent with Verdict.*  When the findings of the jury are incapable of being harmonized, and some of. them are inconsistent with the general verdict, a new trial should be granted.

Appeal from Riley district court.   Opinion filed January 11, 1913.   Reversed.

*R. W. Blair, B. W. Scandrett,* and *C. A. Magaw,* all of Topeka, for the appellant.

*John E. Hessin,* and *John Clarke Hessin,* both of Manhattan, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to recover for two horses killed by one of the defendant's trains. The stock left the land of its owner, went upon the highway and entered upon an adjoining farm over a cattle guard, this farm being fenced according to the finding of the jury. The trial was expressly confined to the allegations of the petition touching the cattle guard, which the testimony showed and the jury found was out of repair. They were instructed that the plaintiff could not recover unless they should find from the evidence that a cattle guard could reasonably be constructed and put into use which would more effectually than the one in question prevent cattle or horses from passing upon the track. The jury returned a verdict in favor of the plaintiff. An objection to testimony under the petition, a demurrer to the evidence, a motion for judgment on special findings and a motion for new trial, were overruled.

The defendant contends that as counsel by clear and express declaration confined the plaintiff's right of recovery to the cattle-guard statute, the circumstances fail to show any violation of duty respecting the plaintiff. It is argued that the only purpose of the cattle-guard provision was to protect the owner of improved or fenced land through which the railroad runs, and that this protection does not extend to an adjoining landowner. It appears from the record that upon the trial the following occurred:

"Mr. Magaw: We would like to have it definitely settled whether the plaintiff is claiming under what is known as the railroad stock law of 1874, or whether he is relying on what is known as the cattle-guard law at railroad crossings, which is sections 7008 to 7010 inclusive, of the General Statutes of 1909.

"The Court: Are you making any contention, Mr. Hessin, that you are proceeding under any other law than that?

Wood v. Railroad Co.

"Mr. Hessin: No, sir; I am not and I have not. I think I made that pretty plain in the opening statement.

"The Court: You are proceeding under the railroad-crossing law—that is, the cattle-guard law?

"Mr. Hessin: Yes, sir."

Cases are cited to the effect that when railroad companies are required by law to maintain fences and cattle guards they will be liable for injuries to animals entering upon the highway by reason of defective guards or wing fences, but we know of no statute which affirmatively requires railroads in this state to maintain cattle guards except where they leave or enter fenced or improved land, and while they are liable for injuries to stock where the railroad is not inclosed with a fence they are so liable by virtue of the act of 1874 (Gen. Stat. 1909, §§ 7001-7005), and not by the act of 1869. The first section of the latter act (Gen. Stat. 1909, § 7008), provides that "When any railroad runs through any improved or fenced land, said railroad company shall make proper cattle-guards on such railroad when they enter and when they leave such improved or fenced land." Section 2 (Gen. Stat. 1909, § 7009) provides that any railroad company failing to comply with this requirement shall be liable for all damages sustained by any one by reason of such neglect and refusal. Under this statute no demand is required and no attorney fee is allowed, and it is manifest that it was not the intention to protect the owners of live stock from damage thereto by the operation of trains, as was the object of the act of 1874. In *Mo. Pac. Rly. Co. v. Manson,* 31 Kan. 337, 2 Pac. 800, it was held that:

"The intention of the statute  .  .  .  is to protect the owners and possessors of improved or fenced land over which a railroad is constructed, against the depredations of domestic animals."  (Syl. ¶ 1.)

In *C. K. & W. Rld. Co. v. Hutchinson,* 45 Kan. 186, 25 Pac. 576, it was said in the opinion:

"We think that the duty of making proper cattle-guards by a railroad company, when its road enters and when it leaves any improved or fenced land on its right-of-way, is a duty to the land-owner from the railroad company." (p. 187.)

It has been held that the landowner may recover for his services in driving out and herding the stock. (*St. L. & S. F. Rly. Co. v. Sharp,* 27 Kan. 134.) A company is bound by the agreement of its roadmaster to erect a cattle guard at a place where the landowner should rebuild his fence. (*Mo. Pac. Rly. Co. v. Lynch,* 31 Kan. 531, 3 Pac. 372.) A landowner may recover for a crop destroyed and also for time and labor in protecting his property. (*St. L. & S. F. Rly. Co., v. Ritz,* 33 Kan. 404, 6 Pac. 533.) The duty rests upon the railroad company itself and can not be avoided by the claim that a contractor neglected to put up proper guards. (*C. K. & W. Rld. Co. v. Hutchinson,* 45 Kan. 186, 25 Pac. 576.) A landowner may recover for the value of his services and the service of his children in driving out and herding stock to prevent further damages. (*Mo. Pac. Rly. Co. v. Ricketts,* 45 Kan. 617, 26 Pac. 50.) Also for a cow which strayed away and mired if the neglect to erect cattle guards was the proximate cause. (*C. K. & N. Rly. Co. v. Hotz,* 47 Kan. 627, 28 Pac. 695; see, also, *C. K. & N. Rly. Co. v. Behney,* 48 Kan. 47, 28 Pac. 980.) A railway company may be compelled by mandamus to construct cattle guards where its road enters or leaves improved or fenced land, in an action by the owner. (*Railway Co. v. Billings,* 77 Kan. 119, 93 Pac. 590.)

Section 5 of the stock law of 1874 (Gen. Stat. 1909, § 7005) excepts from the operation of that act any railway company whose road is inclosed with a good and lawful fence to prevent animals from being on the road. As it is impracticable if not impossible to fence

across the railroad track it has frequently been held that the inclosure of the track is complete when the fences on either side are connected at proper places with wings and cattle guards sufficient to prevent the animals from going upon the track, but in such instances under that statute a cattle guard is deemed a portion of the fence and the failure to provide a sufficient guard is equivalent to the failure to provide a sufficient fence.

In states which require railroad companies to fence their tracks a failure to perform this duty may give a cause of action to others than an adjoining landowner, the duty being one to the public required by the state in the exercise of police power. Thus in *A. T. & S. F. R. Co. v. Reesman,* 60 Fed. 370, it was held by the court of appeals of the eighth circuit that a brakeman injured by the derailment of a train caused by an animal getting on the track through the failure of the company to erect and maintain a sufficient fence was entitled to recover. Mr. Justice Brewer in the opinion distinguished this from the Berry, Johnson and Peddicord cases hereafter referred to, and held that the statute requiring railroads to be fenced was not only for the protection of contiguous landowners but to protect the traveling public also. In *Berry v. St. Louis, Salem & Little Rock R. R. Co.,* 65 Mo. 172, a statute similar to the act of 1869, but broader, was held to be for the benefit of adjoining proprietors and not for the benefit of strangers. The court, speaking through Henry, J., said:

"The duty of fencing the sides of their roads through enclosed and cultivated fields is imposed upon railroad companies for the benefit of the owner or proprietor of such fields and enclosures." (p. 175.)

The holding of the court in *Brooks v. New York & Erie Railroad Co.,* (N. Y. Supr. Ct.) 13 Barb. 594, to the effect that "The cattle of a stranger which are on

the premises of the adjoining proprietor without right are not within the protection of this clause of the statute," was quoted (p. 175) with approval, and cases to the same effect were cited from Vermont, New Hampshire and Massachusetts. In *Harrington v. The Chicago, Rock Island & Pacific Railroad Company*, 71 Mo. 384, this doctrine was reiterated. In *Johnson v. The Missouri Pacific Railway Company*, 80 Mo. 620, it was ruled that before a railroad company would be held liable for killing the horse of the plaintiff, who was not an adjoining proprietor, and which horse escaped from a pasture not coterminous with the right of way and through the enclosed fields of an adjoining proprietor, it must be shown that the horse was in the adjoining proprietor's field by authority or that such field was not protected by a lawful fence. Also that the trial court erred in refusing to instruct that the duty to fence was one which the railroad owed only to adjoining proprietors. In *Peddicord v. The Mo. Pac. Ry. Co.*, 85 Mo. 160, a similar ruling was made, and the Berry, Harrington and Johnson cases were referred to and followed.

The very terms of the act of 1869 indicate that this requirement of a cattle guard where the road enters or leaves inclosed or improved land was to protect the owner of such land, for without such cattle guard the land would no longer be inclosed either actually or theoretically. The stock law of 1874 was enacted for an entirely different purpose, and if we should consider the case as resting solely on the former statute, it would be impossible to hold that the defendant owed any duty to the plaintiff under the facts shown.

There is another matter, however, requiring that the judgment be reversed. The jury found, among other things, that the cattle guard was of the same type of construction of those in general use on the defendant's road and on the roads of two other companies. Also, that

the evidence did not show that there was any other type of cattle guard in general use by railroad companies which would more effectually prevent stock from passing upon the right of way. Following this was a finding that the evidence did not show that a cattle guard can be constructed which would more effectually turn stock than the one over which the plaintiff's horses passed and which would not increase danger in the operation of the trains. They also found that the guard in question was not a proper one, that it was worn, rotten and not properly spiked, and that is was defective at the time. Also, that there was no evidence that the horses were breachy, and that no cattle guard shown by the evidence would have prevented them from going upon the right of way. It can be easily deduced from these various findings that the cattle guard in question was defective, worn, rotten and not properly spiked and that the horses were not breachy, and yet that no other cattle guard and no other type thereof would effectually turn stock or prevent these horses from going on the right of way, although it was expressly found that a reasonably good fence would restrain them. Certain of the findings taken by themselves would warrant a verdict for the plaintiff, while others taken alone would clearly warrant one for the defendant. They are so conflicting that harmonizing them is practically out of the question, and some of them are clearly inconsistent with the general verdict, which under such circumstances can not stand. (*Harvester Works Co. v. Cummings,* 26 Kan. 367; *Shoemaker v. St. L. & S. F. Rly. Co.,* 30 Kan. 359, 2 Pac. 517; *Mo. Pac. Rly. Co. v. Holley,* 30 Kan. 465, 1 Pac. 130; *Insurance Co. v. Smelker,* 38 Kan. 285, 16 Pac. 735; *Aultman v. Mickey,* 41 Kan. 348, 21 Pac. 254; *Kansas City v. Brady,* 53 Kan. 312, 36 Pac. 726; *Bank v. Miller,* 59 Kan. 743, 54 Pac. 1070; *Francis v. Brock,* 80 Kan. 100, 102 Pac. 472.)

The petition appears to have been drawn with reference to the stock law only—there being no allegation that the land where the injury occurred was either improved or fenced. Notwithstanding counsel's expressed reliance upon the cattle-guard act alone, the testimony, the instructions, the findings and the verdict seem to have been given and reached upon the theory that the defendant owed some duty to the plaintiff respecting the cattle guard, which duty, if any, we now see must have arisen under the later and not under the earlier statute. This theory, while within the allegation of the petition, can not be allowed to form the basis of the judgment, on account of the inconsistency of the findings.

The judgment is therefore reversed and the cause remanded with directions to grant a new trial upon the allegations of the petition.