THE AMERICAN NATIONAL BANK OF ARKANSAS CITY, KAN., *et al.*, v. JESSE H. PRESNALL.

No. 9596.

1. DEPOSIT ON CONTINGENCY — *cashier's usual deposit-check prima facie evidence of bank's liability for.* It is within the power of a bank in which a deposit of money has been made or otherwise provided for, to hold the same, and pay the money out upon the happening of a certain contingency agreed upon by the interested parties; and, where such an arrangement is made, a deposit-slip or receipt, issued by the cashier of the bank in the usual and ordinary course of business, is *prima facie* evidence of the liability of the bank.

2. ———— *that deposit not credited on books, immaterial.* The fact that the money deposited or otherwise provided for is not credited upon the books of the bank, will not change the nature of the transaction nor relieve the bank from the liability which its managing officer assumes.

3. *Kansas National Bank v. Quinton* (57 Kan. 750) followed.

4. ———— *evidence held sufficient to sustain verdict in action for.* The testimony examined, and *held* to be sufficient to sustain the finding that the contract in question was made with the bank and not with its cashier as an individual, and that it was bound to deliver money, and not checks, when the conditions upon which the deposit was made had been complied with; and further, that it is sufficient to sustain the general verdict.

Error from Cowley District Court.   Hon. A. M. Jackson, Judge.   Opinion filed April 10, 1897.   *Affirmed.*

*Peters & Nicholson*, for plaintiffs in error.

*C. H. Peckham* and *E. L. Peckham,* for defendant in error.   *Stanley & Vermillion*, of counsel.

JOHNSTON, J. Jesse H. Presnall. who had charge of 34,560 acres of land in Texas, the legal title to which was in N. B. Pulliam and William Childress, negotiated a sale of the same to Dubois & Wentworth through M. R. Dubois. The lands were incumbered; and it was agreed that, as part of the purchase price of $1.62½ per acre, Dubois & Wentworth should assume the payment of the incumbrances on the lands. Presnall was to receive a substantial part of the purchase price, the remainder to be divided with Pulliam and Childress. All these parties were residents of Texas; and Dubois & Wentworth, as well as Presnall, were largely engaged in the cattle business in Texas and in the Territory of Oklahoma. Many of their transactions in connection with the cattle business were had at Arkansas City, and Dubois & Wentworth had large transactions with the American National Bank of that place. The negotiations for the sale were pending for some time, and the final agreement between Dubois and Presnall was made at Arkansas City on October 18, 1890. Presnall had obtained deeds of conveyance for the land from Pulliam and Childress, but did not have abstracts of title exactly showing the incumbrances against the land. A reckoning, however, was made, and it was understood that there were incumbrances to such an extent as would reduce the purchase price from $56,160 to the sum of $22,200. Dubois did not desire to pay over the money until the abstracts were obtained showing the extent to which the land appeared to be incumbered upon the records. It was then agreed that the deeds should then be placed in the Bank until they could get a complete abstract; and the contention is that the money and deeds were placed in the hands of Lamson, the cashier of the Bank. They appear to have computed and agreed

upon the amount which would be due to Presnall, Pulliam and Childress, respectively, and checks for the several amounts were drawn by Dubois on the American National Bank and made payable to Presnall; the aggregate amount being $22,200. This was done at the Bank and in the presence of Lamson, who was advised of the nature and terms of the transaction. The checks were then delivered to Presnall and the deeds of conveyance to Dubois. When the exchange was made, Dubois delivered the deeds, and Presnall presented the checks, to Lamson, who was instructed to hold the deeds until the completion of the abstract to the lands described in the conveyances. Lamson then delivered to Presnall the following writing:

"Deposited with American National Bank, Arkansas City, Kansas, by J. H. Presnall, October 18, 1890, $22,200, to be delivered to Presnall upon clear abstract of property on deeds left with me.

H. LAMSON, C."

A receipt was handed to Dubois, which was as follows:

"AMERICAN NATIONAL BANK, ARKANSAS CITY, KAN. By Presnall and Dubois, October 18, 1890, deeds to certain tracts of land and $22,200, upon contract.

H. LAMSON, C."

Shortly after the deposit was made a dispatch was sent by Lamson to Pulliam and Childress, stating: "Money deposited with deeds with me until abstracts are examined. American National Bank." When the abstracts were obtained the incumbrances were about ten thousand dollars more than the parties understood them to be; and it was then agreed between Dubois and Presnall that the purchaser would assume the additional incumbrances and deduct the amount from the balance due upon the sale. Abstracts, however, were obtained, and an arrangement was made

which was satisfactory to Dubois, but the officers of the Bank at first declined to pay the money until the releases were recorded, and subsequently refused payment. The Bank finally became insolvent, and its affairs passed under the control of a receiver. It appears, however, that, at about the time the contract was made, Lamson advanced two hundred dollars of the amount to Presnall, and subsequently Dubois advanced the further sum of twenty-one hundred dollars. Although the purchase price of the land was not paid, Dubois obtained the deeds, which were in the Bank, then in the hands of a receiver, under which he went into possession of the land; and he has since sold the same, or contracted to sell it, to others. Presnall brought this action, against the Bank and its receiver, to recover the money deposited in the Bank for his benefit; setting forth the certificate or deposit-slip which the cashier gave to him when the deposit was made. He alleged that all the conditions of the agreement had been complied with, and that he was entitled to recover the balance of the purchase price of the land. In its defense, the Bank and its receiver insisted that, in giving the certificate or receipt, Lamson acted as an individual and not as an officer of the Bank, and that it was so understood between the parties to the transaction; that there was no money in fact deposited in the Bank before or at the time of the giving of the certificate or receipt, but that Lamson was simply to hold the checks and the deeds and deliver the same when compliance was made with the conditions of the contract. It was also alleged in the defense that Presnall had no right to recover the full amount claimed, and that the entire interest that he had in the land did not exceed the sum of eight thousand dollars. The trial resulted in a verdict in favor of Presnall. The sufficiency of the evidence

was challenged by demurrer and by a motion for a new trial. It is the principal question presented for review, and involves the character of the deposit and the character in which Lamson acted in accepting it.

If Lamson acted as cashier, and money was deposited or otherwise provided for in the Bank to be paid to Presnall upon the happening of a certain contingency, it must be held that the liability of the Bank was established. It appears that the conditions to be performed by Presnall were performed to the satisfaction of Dubois, and Presnall was then entitled to the balance of the money due upon the land. We think the testimony sufficiently shows that in receiving the deposit Lamson acted as cashier. The transaction was had in the Bank, and the certificate or deposit-slip was such as the Bank usually gave when a deposit was received. It was signed by Lamson as cashier. At the end of his signature was the letter "C," which was the usual way he signed as cashier, and was, in fact, his official signature. The acceptance of a specific deposit, as this was claimed to be, and the payment of the same upon the happening of a contingency, is within the powers of a bank and incidental to ordinary banking business.

2. No credit on books, immaterial.

The fact, if it be one, that the money was not credited upon the books of the Bank, does not change the nature of the transaction nor relieve the Bank from the liability which its managing officer assumed. The neglect of the officers of the Bank in this respect cannot prejudice the rights of any one interested in the deposit. *Ellicott v. Barnes*, 31 Kan. 170. More than that, the certificate of deposit, or receipt, as it may be termed, was set forth in the petition, and the deposit was alleged to have been received by Lamson as cashier and as the duly authorized agent of the Bank. There was no

verified denial of this averment. A certificate of the character of the one in question, made by the cashier of a bank in the usual and ordinary course of business, is *prima facie* evidence of the liability of the bank. The statement on the face of the certificate, which, as we have seen, was signed by the cashier, strongly tends to support the finding of the jury. In effect, it is stated that the deposit is made with the Bank, that the deposit is money, and not checks, and that the money is to be delivered to Presnall when the condition is performed. That it was money, and not checks, which was to be delivered to Presnall, finds support in the dispatch which was sent by Lamson to Pulliam and Childress about the time the deposit was made. The statement was — "Money deposited with deeds with me until abstracts are examined." It will be noted, too, that this dispatch was signed, not by Lamson, but by "American National Bank." The contention is that there was no money, in fact, deposited by Dubois & Wentworth in the Bank upon which the cashier could issue the certificate. As has been stated, Dubois & Wentworth conducted an extensive business with the Bank. Large deposits were made by them from time to time, and notes for considerable amounts were made to the Bank and the proceeds thereof passed to their credit. There is some testimony that a note was made and negotiated by the Bank within a short time of the transaction in question. The liability of the Bank did not depend upon the fact that an actual deposit of money was made at the time for the use and benefit of Presnall. If the firm had a credit in the Bank, either by note or otherwise, against which they had a right to check, or if the cashier of the Bank accepted the checks of the firm as a deposit, and the certificate

1. Deposit check prima facie evidence of liability.

given to Presnall was founded thereon, that was sufficient.

The decision in the recent case of *Kansas National Bank v. Quinton* (57 Kan. 750) applies very closely to the facts in the present one. There, an arrangement was made with the cashier of the bank for a loan of money, the proceeds of which were to be paid to another upon the performance of certain services. It was contended by the bank that no money was in fact deposited, and that the cashier acted as an individual rather than as the cashier of the bank. It was further contended that the arrangement for the deposit and payment of the money was one which was beyond the power of the bank to make. It was found, however, that it was a bank, rather than an individual, transaction, and that while the cashier issued no certificate or deposit-slip, as in the present case, he did state that the money was up. Upon the facts, it was held that the transaction was one that was included within the powers of the bank and incidental to its ordinary business, and that such a power could be exercised by the cashier or managing officer of the bank. There, there was no written statement signed by the cashier, but only proof that the cashier orally agreed that the money had been provided in the bank and would be paid when the condition was performed. Here, we have the certificate that the money is actually deposited to the credit of Presnall, to be paid upon the happening of the contingency, and that signed by the cashier of the Bank.

There is much conflict in the testimony upon the questions we have been considering, but there is no 4. Evidence sufficient. difficulty in finding testimony to support the verdict of the jury. No special findings were returned, and, as there is supporting testimony for the general finding, the controversy over the

facts has been set at rest. Although others were interested in the transaction with Presnall, the executed conveyances of the land were placed in his hands and under his control, and the contract itself was made in his name for the benefit of all ; and he is therefore entitled to maintain the action for the recovery of the money. Civil Code, § 28.

The instructions given to the jury fairly presented the case for decision, and it appears that no exceptions were taken to those that were given. Exceptions were taken to the refusal of a number of instructions that were requested, but an examination of these shows that the law announced therein, so far as proper and applicable to the facts in the case, was covered by the charge that was given.

Our view is that a correct conclusion was reached by the jury, and that therefore the judgment of the court thereon must be affirmed.