No. 22,468.

THE SECURITY NATIONAL BANK, *Appellee*, v. R. B. MC-CUTCHEON, JASPER STEWART, LAURA STEWART (and THE HOME NATIONAL BANK, *Appellant*).

### SYLLABUS BY THE COURT.

1. JURISDICTION—*Local Service on One Defendant—Summons on Co-defendants Properly Issued to Another County.* None of the defendants in a transitory action was a resident of Cowley county, where the suit was brought. One of them entered his voluntary appearance in writing and waived the issuance and service of summons, which, under section 68 of the code, is equivalent to service. *Held,* that under section 61 of the code, the action being rightly brought in Cowley county, the court had jurisdiction to issue summons for the other defendants to another county.

2. PLEADING—*Motion to Make Definite Properly Overruled.* There was no abuse of discretion in overruling a motion to make the petition more definite and certain, where it appeared that the information requested was peculiarly within the knowledge of the defendant.

3. BANKS AND BANKING—*Liability of National Banks for Negligence.* National banks are liable for the negligent loss of property held by them, merely for the accommodation of their customers, without any consideration for the keeping of it, except the profit derived from their customers doing with them their banking business.

4. SAME—*Business Intrusted to Bank Not Ultra Vires—Care Required of Bankers Acting as Agents or Bailees.* A national bank held a deed to real estate in the nature of a mortgage securing an indebtedness due from the mortgagor and subject to two other mortgages. The land was worth more than all the liens and incumbrances. The first mortgage became due before the others, and the parties arranged to have all the mortgages and liens renewed in the order in which they then stood. By agreement of the parties the bank holding the third mortgage prepared the papers and sent them to the defendant, a national bank, at the place where the land was situated, and where the mortgagor lived,

with directions to have the papers executed and then recorded so as to preserve the liens as they then stood, offering to pay defendant the "recording expenses, etc.," when advised of the amount. The letter with which the papers were sent inclosed a draft with instructions to deliver to one of the parties upon his delivery of a proper release of the first mortgage. In violation of the positive instructions, the defendant bank filed the quitclaim deed from the plaintiff to the mortgagor which released plaintiff's lien, the release of the first and second mortgages and the renewals of those mortgages, but failed to file the deed from the mortgagor renewing plaintiff's lien until after the mortgagor had sold and conveyed the land to an innocent purchaser. After disposing of the land the mortgagor became insolvent. The petition alleged the foregoing facts and further that the defendant bank and the mortgagor conspired together to defeat plaintiff's lien, and damages were asked against the bank for the loss occasioned by its negligence and fraud. It is·held,

(a) that the transaction was within the powers of the defendant bank, incidental to its ordinary business;

(b) that whether the transaction was within the powers conferred upon the defendant by the national banking act, the defendant became a bailee, and liable for any loss occasioned by its failure to exercise due care and diligence;

(c) that an action may be maintained against a national bank for damages resulting from its malicious or negligent torts, and that in such a case the doctrine of *ultra vires* has no application. (*National Bank v. Graham*, 100 U. S. 699.)

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed February 7, 1920. Affirmed.

*Chester Stevens*, of Independence, and *J. E. Torrance*, of Winfield, for the appellant.

*W. L. Cunningham*, of Arkansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The Security National Bank of Arkansas City, hereinafter referred to as the appellee, sued the Home National Bank of Longton, hereinafter called the appellant, with other defendants, to recover the value of certain securities which appellee lost by reason of the fraud or negligence of the appellant. It is claimed there was error in overruling a motion to dismiss, in overruling a motion to make the petition more definite, and in overruling a demurrer to the petition.

In July, 1916, Jasper Stewart owned land near Longton in Elk county on which there was a first mortgage in favor of

the Merriam Mortgage Company for $3,000; a second mortgage to E. Kirkpatrick for $865; and a third mortgage evidenced by a deed from Stewart to the appellee, to secure an indebtedness of $3,040 owing to that bank. The land was worth considerably more than the liens and incumbrances. The first, or Merriam mortgage, became due before the others, and Stewart made arrangements with the mortgagees to have their mortgages and liens renewed in the order in which they then stood. Stewart and wife lived at Longton, and were to execute the renewal notes and mortgages there. By agreement of the parties the papers were prepared and sent by the appellee to the Home National Bank of Longton with specific directions to have the papers executed and then recorded so as to show, first, the Merriam mortgage; second, the mortgage to Kirkpatrick, then the deed to appellee, with instructions that "after the instruments are recorded kindly return to us together with a statement of your recording expenses, etc., which we will remit." The letter inclosed a draft with instructions to deliver to McCutcheon upon his delivery of a proper release of the Merriam mortgage.

The petition alleged that the appellant accepted the employment and trust, took possession of the papers and caused the same to be signed by the Stewarts as requested, but in pursuance of conspiracy entered into with McCutcheon and the Stewarts for the purpose of defrauding appellee, filed only such papers as would divest appellee of any interest in the land, and in violation of its duty and positive instructions by which it had agreed to be bound, filed for record the quitclaim deed, from appellee to the Stewarts, the release of the Merriam and Kirkpatrick mortgages, and failed to file the deed from the Stewarts to the appellee until after the Stewarts had sold and conveyed the land to an innocent purchaser; that the appellant concealed from appellee the fact that it had failed to file the deed protecting appellee's lien, and that the Stewarts, since the transfer of the land, have become wholly insolvent. The petition asked judgment for the loss of appellee's lien on and equity in the land to the extent of $3,040.

1. The first complaint of error is the overruling of the motion to dismiss. The suit was brought in Cowley county,

where the appellee has its bank. Jasper Stewart at that time was a resident of Sedgwick county; R. B. McCutcheon and the appellant were residents of Elk county. Jasper Stewart came to Cowley county, entered his voluntary appearance in writing and waived the issuance and service of a summons on him. Summons was thereupon issued to Elk county and served upon the appellant and R. B. McCutcheon. The motion to dismiss averred that the pretended entry of appearance by Stewart was procured and filed wrongfully with the purpose and intent to confer jurisdiction. The court heard the evidence as to the entry of appearance and found generally for the appellee on that issue. Mr. Cunningham, attorney for the appellee, testified that he called Stewart on the telephone at Burbank, Okla., and told him that the next time he was in Arkansas City he would like to see him; that Stewart said all right, and later came to his office in Arkansas City. The witness further testified:

"I told him we were going to bring suit against the bank over there and McCutcheon; . . . and I showed him the petition. . . . I told him I didn't want him to feel that I was going to take advantage of him and get summons on him while he was here, but, 'Sometime if I catch you going through here on a train I am going to sue you.' He says, 'You don't need to go to that trouble and expense; I will enter my appearance.'"

This is a transitory action and could be brought in any county where the defendants might be found. (Civ. Code, § 53, Gen. Stat. 1915, § 6943.) Section 61 of the code (Gen. Stat. 1915, § 6952) provides that where the action is rightly brought in any county according to the provisions of article 5, a summons on plaintiff's præcipe shall be issued to any other county against any one or more of the defendants. The statute provides that "An acknowledgment on the back of the summons, or the voluntary general appearance of a defendant, is equivalent to service." (Civ. Code, § 68, Gen. Stat. 1915, § 6959.) In *Hendrix v. Fuller*, 7 Kan. 331, one of two defendants in the county in which the suit was brought acknowledged service on the back of the summons (by his attorney in fact), and it was held that a summons for the other defendant was rightly issued to another county. Where one defendant acknowledges service, the action is rightly brought in that county, and a summons may issue to another county

for the other defendants. (*Hembrow v. Winsor*, 87 Kan. 714, 125 Pac. 22.) In the recent case of *Davies v. Lutz*, 105 Kan. 531, 185 Pac. 45, it was said in the opinion:

"Even if Davies had permitted service to be made upon himself in Harper county for the very purpose of having the controversy litigated there, the residents of the other county could not on that account defeat the local jurisdiction on the ground of an abuse of process. (*Bank v. Niquette*, 103 Kan. 410, 174 Pac. 581.) If he had entered a voluntary appearance to such an action the same result would seem to follow." (p. 534.)

In *Bank v. Niquette, supra,* the plaintiff wrote to a defendant asking him to come to Kansas City, Kan., plaintiff's place of business, and discuss the liability of himself and the other defendants for the indebtedness owing plaintiff. He did this, and after discussing the merits of the case, agreed to wait while the petition was drawn and a suit commenced and summons issued and served upon him, after which service was obtained upon the other defendants in Finney county. It was held that he was not enticed into the jurisdiction of the court in Wyandotte county by fraud or deception, but came voluntarily, and that there was no abuse of judicial process in serving him there and in serving the other defendants in Finney county. (See, also, *Shaffer v. Harbaugh*, 105 Kan. 681, 185 Pac. 1049.) According to the averments of the petition, Stewart was a necessary and proper party; he had participated in the wrongful act complained of, and regardless of his motives in acknowledging service, or those of appellee in procuring such acknowledgment, his act gave the court jurisdiction to issue a summons to the other county.

2. After the motion to dismiss had been overruled, the appellant filed its motion to make the petition more definite by stating what officer or agent of the bank accepted the employment, and counseled with the Stewarts for the purpose of defrauding the appellee, etc., and whether the agreement for the conspiracy or the acceptance of the trust was in writing. The bank, of course, acted by its officers and agents, and so far as the petition discloses, the information requested by the motion and the matters and things involved therein were peculiarly within the knowledge of the appellant. Transactions involving conspiracies are seldom put in writing. The ruling was

largely a matter within the discretion of the court, and in whatever way it is considered, it furnishes no ground for reversal.

3. The principal contention is that the transaction on the part of the bank was *ultra vires*. It is insisted that it was one which is not a part of the banking business within the contemplation of the national banking act, one which the bank had no authority to undertake to perform, and therefore could not become liable for its misfeasance or nonfeasance in the matter. There can be no doubt that the transaction was a special deposit of valuable securities with specific directions as to how the deposit was to be kept and handled. It is urged that it was not a cash transaction, that there were a number of things to be done which were entirely outside the banking business when performed or to be performed for someone else. We think it was one within the powers of the appellant, incidental to its ordinary business (*National Bank v. Presnall*, 58 Kan. 69, 48 Pac. 556).; not differing greatly from many transactions which are undertaken every day by both national and state banks for the purpose not only of accommodating their bank correspondents and others, but for the incidental purpose of bringing business and good will to the bank itself. It constituted a bailment.

"A very important part of the business of every bank, whether private or incorporated, consists of acting as an agent or bailee for its customers." (Note on the subject of "Care Required of Bankers Acting as Agents or Bailees," 38 Am. St. Rep. 773.)

The following excerpt from the opinion in *Third National Bank v. Boyd*, 44 Md. 47, 54, although admittedly dictum because not expressly involved in the appeal, is a correct statement of the law:

"National banks are liable for the loss of property held by them, merely for the accommodation of their customers, without any consideration for the keeping of it, except the profit derived from their customers doing with them their banking business."

If the transaction here be regarded as a gratuitous bailment, the appellant was liable for gross negligence. (*Foster & Al.*, Executors, *v. Essex Bank*, 17 Mass. 479, a leading case where the special deposit was a cask containing gold coin.) In the law of bailments it is well settled that any benefit or advantage, however slight, accruing to the bailee, will render

the transaction a bailment for hire. It is not necessary to determine in which class of bailments the transaction here properly falls. The bank could have declined to accept the deposit or to undertake performance of the duty imposed upon it; but in that event it should have promptly returned the papers. (*National Bank v. Graham,* 100 U. S. 699.) In the latter case it was said:

"The only way of escape from liability open to the latter [the bank] would have been to return the property to the owner, or to get rid of its possession otherwise in some lawful way. Gross negligence on the part of a gratuitous bailee, though not a fraud, is in legal effect the same thing. *Foster v. Essex Bank,* 17 Mass. 479. It is a tort, and an action on the case is the appropriate remedy for such a wrong." (p. 701.)

The Graham case has become a leading one upon the subject of the liability of a bank for loss occasioned by the negligence of its officers in the handling of a special deposit. It was said in the opinion:

"Corporations are liable for every wrong they commit, and in such cases the doctrine of *ultra vires* has no application. . . . An action may be maintained against a corporation for its malicious or negligent torts, however foreign they may be to the object of its creation or beyond its granted powers." (p. 702.)

Some effort is made by appellant to distinguish the case from the facts stated in the petition here, because the supreme court of the United States held the bank liable upon still another ground which was, that by implication the banking act of 1864 recognized the right of national banks to accept special deposits. That the decision was rested upon two distinct grounds detracts nothing from its force as an authority on the proposition that a national bank is liable for its negligent torts resulting in the loss of a special deposit, however foreign the transaction "may be to the object of its creation or beyond its granted powers." It has been cited by the text-writers and annotators as a leading authority upon what we regard as the question here involved. It is the first case cited in support of the statement that the federal courts have determined that the keeping of special deposits for customers is within the power of the national banks, "*and even if it were not,* that . . . the bank cannot escape liability by the plea of *ultra vires*." (Note on the subject of "Care Required of Bankers Acting as Agents or Bailees," 38 Am.

St. Rep. 773, 778. See, also, Note, 70 Am. St. Rep. 159, where the case is cited in support of the doctrine that the defense of *ultra vires* is held to have no application in favor of corporations for wrongs committed by them; *First Nat. Bank of Monmouth v. Strang,* 138 Ill. 347; 5 Cyc. 589.)

The transaction in the present case was not one that is prohibited by considerations of public morality, of justice or of sound public policy, and the rule is well established that in a suit between individuals and corporations where private rights only are involved, the defense of *ultra vires* must always yield to considerations of right and justice.

In *National Bank v. City Bank,* 103 U. S. 668, bills of lading for cargoes of wheat were sent to a bank with instructions. which asked the bank to look after the property, and control the possession of the wheat until the drafts were paid. The defendant failed to do this, but it was held that, like any other bailee, it must obey all lawful instructions from its principal or bailor and exercise due care and diligence in accomplishing what it undertakes to perform for him.

In a comprehensive note on the doctrine of *ultra vires* (70 Am. St. Rep. 155, 169, 180), Mr. Freeman said:

"After a study of the cases upon the subject of this note, the impression is forced upon us that the doctrine of *ultra vires,* as applied to the contracts of private corporations, has almost lost its meaning." (p. 180.)

"If a contract is intended to further the interests and objects of a corporation, courts are loth to declare it *ultra vires;* and it is obvious that such a criterion allows courts a very liberal latitude." (p. 161.)

In reference to the defense of *ultra vires* by a banking corporation, it is said in 3 R. C. L. 420:

"It may have had no legal power to take the steps by which the money or property of third persons came into its hands, but, having taken such steps and obtained their money or property, no such absurdity exists as a legal obstacle to its surrendering it. It would be a reproach to the law to hold any such doctrine of inequity. And this rule is fully applicable to national banks."

Without further comment or citation of authorities, we are of the opinion that the facts set forth in the petition show such negligence and want of care on the part of appellant, when considered in connection with appellee's positive directions, as would make the appellant liable as bailee for the loss sustained by the appellee.

The judgment is affirmed.