## STATE OF KANSAS

### JANUARY TERM, 1927.

*PRESENT:*

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. JOHN MARSHALL,
HON. JOHN S. DAWSON,  } JUSTICES.
HON. W. W. HARVEY,
HON. RICHARD J. HOPKINS,

No. 27,042.

W. S. FULTON, *Appellee*, v. THE FARMERS NATIONAL BANK,
*Appellant.*

OPINION DENYING A REHEARING.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion denying a rehearing filed February 25, 1927. (For original opinion of affirmance see 122 Kan. 400, 252 Pac. 242.)

*Guy L. Hursh,* of Topeka, for the appellant.
*Leonard S. Ferry* and *Edwin A. Austin,* both of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: A motion for a rehearing presses some phases of the appellant's contentions which were not treated in the opinion as fully as might be desired. It mentions that the syllabus described the land which figured in the case as a quarter section, while the only evidence on the subject was that of the plaintiff, who said all he knew about it was that it was an Oklahoma farm which he thought had 160 acres—adding, "something like that." His uncertainty as to the acreage is of significance only as tending to discredit his story by showing how little he knew about the security he said he relied

Appeal and Error, 4 C. J. p. 848 n. 35. Banks and Banking, 7 C. J. p. 808 n. 30. Trial, 38 Cyc. p. 1603 n. 59.

on, and this was a matter for determination by the jury and trial judge.

One of the findings of the jury, which was set out in the statement of facts in the opinion, was that the bank derived no benefit from the transactions between the plaintiff and its cashier, and retained no part of the plaintiff's money. Later in the opinion this finding was referred to as establishing that the bank derived no "profit" from the transaction. In the motion for a rehearing attention is called to this inaccuracy, and the suggestion is made that if the bank derived no *benefit* from the transaction then it incurred no contractual obligation, for the reason that a consideration was lacking. The jury may have interpreted "benefit" as the equivalent of "profit," referring to an immediate and direct financial return. But in any event, "the incidental purpose of bringing business and good will to the bank" (*Bank v. Bank*, 106 Kan. 303, 187 Pac. 697) was a sufficient basis for its agreement and the circumstance that in fact no good results followed would not relieve it from the obligation it had assumed.

The jury found that the plaintiff accepted the Ellington note knowing that the deed to the Oklahoma land had not been procured, and that he relied on the cashier's promise to procure it. The plaintiff testified that later the cashier told him he had it, the interval not being shown, but there being room for an inference that it was very short. In the original opinion it was said the promise and the statement might be regarded as parts of the same transaction. In the motion for a rehearing it is argued that the plaintiff waived the condition that security for the note was to be given, and the waiver could not be affected by the promise to procure it and the later statement that it had been procured. We recognize the plausibility of the argument, but remain of the belief that, assuming the cashier had no general authority to bind the bank by a promise to procure security for a note after its delivery, in the situation presented the transaction as a whole involved a violation of the bank's contractual obligation.

The appellant contends that error was committed in the giving and refusal of instructions concerning the effect of the changes made in the note by the cashier, and that the findings could not cure the error because they may have been influenced by it. One of the instructions asked and refused was to the effect that consent to an

alteration of an instrument may be express or implied and that a consent would be effective although given after the change. In this connection it is argued that Ellington must have learned of the changes in the note when the plaintiff saw him in California, and that he did not then repudiate the contract; that if the instruction asked had been given, the jury might have found that he consented to the changes by his conduct after learning of them.

It is our view, however, that the case does not turn upon the general rules concerning the alteration of a note, applicable in an action against the maker. Assuming that the situation was such that the plaintiff might have brought an action against Ellington on the note as originally drawn, disregarding the attempted changes, and could have recovered a judgment against him on the ground that he had received the benefit of the money obtained by its means and had not restored it, or that with knowledge of the changes he had not repudiated the note, we hold the bank would still be liable. What it gave the plaintiff was not what it appeared to be. It was not a valid note payable to him. If it was what might have been proved to have the effect of a note payable to the bank and turned over to him without the bank's indorsement, on which by proving certain matters he might hold Ellington liable, its delivery to the plaintiff would not have been a compliance with the bank's contract with him. The investing him with rights of that character would no more satisfy the requirement of the contract than a rule of evidence would have been a substitute for a cement floor, in the situation presented in *Construction Co. v. Board of Administration*, 112 Kan. 648, 652, 212 Pac. 1089.

The trial judge did not undertake to give general instructions concerning the effect of changes in written instruments. He stated concretely the rules for the guidance of the jury, as they applied to the facts of the case. He said the changes in the note if made without authority rendered it invalid, and so they did so far as concerned the effect on the verdict, regardless of the general rule as applied in other situations. His language was that if the alterations were made with Ellington's consent the note was valid, but if they were made without his consent then "the plaintiff did not receive a valid note . . . or such a note as he was entitled to receive in his transaction with the bank through its cashier." The jury found the changes were made after its execution without Ellington's consent

or authority. We see no reason for thinking the jurors were in any way misled.

The motion for a rehearing is overruled.

HARVEY, J., not sitting.