No. 28,914.

E. J. Dempster, as Receiver of the State Bank of Superior, Nebraska, *Appellant,* v. G. W. Ackley, *Appellee.*

(282 Pac. 595.)

Opinion

filed December 7, 1929.

R. W. Turner, D. F. Stanley, both of Mankato, and Thomas J. Keenan, of Geneva, Neb., for the appellant.

George E. Teeple and A. Teeple, both of Mankato, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff, as receiver of the insolvent State Bank of Superior, Neb., brought this action against G. W. Ackley, a former resident of Jewell county, but more recently a resident of California, to recover the sum of $3,632.55 which it was alleged the former president of the bank, Joseph E. Weir, had paid out of the bank's funds to satisfy a mortgage on Ackley's farm held by the First Trust Company of Lincoln, Neb.

The antecedent facts leading up to plaintiff's cause of action were these: Some years ago Ackley's son, Emor L. Ackley, desired to buy an eighty-acre farm covered by a $5,000 mortgage. To aid him in that project defendant Ackley mortgaged his own farm to the Lincoln Trust Company for $3,600 and loaned that sum to his son, taking a second mortgage on the eighty acres to secure its repayment to him. The son sold the eighty-acre farm to Joseph E. Weir, subject to the two mortgages, and Weir in turn sold it to Edward Wilde, who assumed and agreed to pay the two mortgages. Wilde was apparently a man of some means, and he determined to pay off the second mortgage held by Ackley, senior, defendant herein. At the same time Weir, the banker, negotiated a personal loan of $1,000 to himself from Wilde, and in accordance with both purposes Wilde gave Weir a check for $5,042.92, which included the amount of the $3,600 second mortgage and some accrued interest, and the $1,000 to Weir personally. Some time elapsed before Ackley, senior, who was then in California, was advised that Wilde had paid over the money to satisfy the $3,600 second mortgage on the eighty acres. When Ackley learned of it he released that mortgage. It seems that the bank officials understood that defendant Ackley wanted the money sent to the Lincoln Trust Company to pay off the mortgage on his own farm, but the bank was slow about attending to that detail. Ackley repeatedly wrote to the bank about this delay, and eventually a cashier's check for $3,632.55, executed by Joseph E. Weir as president of

the State Bank of Superior, was forwarded to the Lincoln Trust Company to satisfy the mortgage on defendant Ackley's own farm.

Apparently no methodical record was made in the bank of the receipt of the $3,600 and interest. The books of the bank did show a deposit of $5,042.92 to the credit of the private checking account of the president and cashier of the bank, "Weir and Aldrich," and when the cashier's draft for $3,632.55 was forwarded to the Lincoln Trust Company a debit slip was carried among the cash items of the bank, which read:

DEBIT: Weir & Aldrich 1-15 1927
G. W. Ackley, $3,632.55
First Trust Co.
ENN.

The theory underlying plaintiff's cause of action was that the bank had nothing to do with the transaction, that the payment of the money by Wilde to extinguish the second mortgage on the eighty acres he had purchased was not made to the bank, but to Weir, its president, personally; and that Weir as president had wrongfully appropriated $3,632.55 of the bank's funds to pay off a debt of his own to the defendant Ackley; and in consequence that defendant Ackley owed the bank for its money thus paid out in his behalf.

The principal issue raised by the pleadings and around which the evidence of the litigants centered was whether the receipt of the money from Wilde and the subsequent satisfaction of the mortgage held by the trust company on defendant Ackley's farm was a bank transaction or a personal one with Weir, the bank's president. The jury resolved that question in favor of defendant, and judgment was entered accordingly.

Plaintiff appeals, assigning certain errors, the first of which is based on the overruling of appellant's motion for judgment on the pleadings and opening statement of the appellee. No error is apparent in these rulings. Defendant's answer conceded nothing to his prejudice, and the opening statement of his counsel merely sketched the main outlines of his defense. In *Smith v. Insurance Co.,* 108 Kan. 572, 196 Pac. 612, it was said:

"As opening statements of counsel are generally no more than outlines of anticipated proof and not intended as a complete recital of the facts to be produced on contested issues, a judgment should not be entered on such statements unless they are understandingly and completely made and the facts so stated absolutely preclude a recovery or a proposed defense." (Syl. ¶ 1.)

The second error assigned relates to the exclusion of testimony, but what its nature might be is not disclosed; consequently it presents nothing for review. (*Nutter v. Black,* 126 Kan. 331, 267 Pac. 961.)

Error is also assigned on the overruling of appellant's motion for a directed verdict. As we have seen, however, there was an issue of fact to be determined. While it is contended that there were no disputed facts, and in a sense that is true, there was a conclusion of fact to be deduced from the conceded primary facts. There is a cross appeal based on the point that appellee should have had judgment on the pleadings, statements of counsel and undisputed facts. However, it can hardly be held that the trial court erred in not disposing of the case on a motion for an instructed verdict, at least so far as concerns the appellant.

Another contention of appellant is that the trial court erred in its instruction to the jury. Here, if anywhere, is the crucial point in this appeal. In substance the court instructed the jury that if Wilde's payment of the money due Ackley on the second mortgage was a transaction with the bank and not with Weir, its president, personally, then Ackley would not be liable. Certainly that was a correct statement of the law. Where a bank receives money for the purpose of transmitting it to a third party the fact that it dilly-dallies for several months before it performs the obligation it has undertaken does not alter its duty nor its liability, nor does it alter the nature of the transaction. The industry of appellant's counsel has brought together a respectable list of authorities to the effect that an officer of a bank has no authority to pay his individual debt to a depositor of the bank by crediting the pass book of the depositor with mere record entries of money where no money was in fact paid and where the bank received nothing of value in the transaction. Of course that is the law. But it has nothing to do with this lawsuit. Ackley was not a depositor in the bank. Weir, the bank president, owed no debt to Ackley. The bank received money from Wilde for the use and benefit of Ackley. Ackley wanted the bank to send that money to the trust company to pay off his mortgage. The bank did so. Such a transaction is one of everyday occurrence in banking circles. The average layman who deals with a village bank and banker cannot be expected to recognize subtle distinctions between business dealings with the bank and dealings with the individual who happens to be the

banker, and the courts should not be astute to relieve the bank of its due responsibility for a transaction which was within the general scope of its business activities. It does appear that the president and cashier of the bank of Superior misapplied the money paid in by Wilde. They put it to the credit of their private checking account. But Wilde knew nothing of that; Ackley knew nothing of that. Nobody putting money in a bank for any purpose can be assured that the banker will devote the money to the purpose for which it is intrusted to the bank—for deposit, transmission, or other particular intent. In *National Bank v. Presnall,* 58 Kan. 69, 48 Pac. 556, a large sum of money was placed in the hands of the cashier of a bank to await the consummation of a real-estate transaction. The bank became insolvent and the question arose whether the deposit was with the bank or merely with the man who was its cashier. In affirming a judgment holding the bank liable, this court held:

"The fact that the money deposited or otherwise provided for is not credited upon the books of the bank, will not change the nature of the transaction nor relieve the bank from the liability which its managing officer assumes." (Syl. ¶ 2.)

In the opinion it was said:

"The acceptance of a specific deposit, as this was claimed to be, and the payment of the same upon the happening of a contingency, is within the powers of a bank and incidental to ordinary banking business. The fact, if it be one, that the money was not credited upon the books of the bank does not change the nature of the transaction nor relieve the bank from the liability which its managing officer assumed. The neglect of the officers of the bank in this respect cannot prejudice the rights of any one interested in the deposit. *Ellicott v. Barnes,* 31 Kan. 170." (p. 73.)

There ought not to be two opinions about the responsibility of a bank for the act of its president in receiving money for the use and benefit of a third party where the president appropriates that money to his own use. In the absence of unusual circumstances, public policy should not countenance a claim by the bank that it was not responsible for the delinquency of its president. (*Steckel v. Bank,* 93 Pa. St. 376.) In *Fishkill Savings Institute v. Bostwick et al.,* 92 N. Y. 564, a savings institute and a bank were operated by the same persons as officers. Separate accounts were kept, but the moneys of both concerns were to be kept in the bank. A customer of the institute delivered over the counter to Barstow a sum of money to be deposited with the institute to her credit. Barstow was both treas-

urer of the institute and cashier of the bank. He did not enter the item upon the cashbook of the bank, but embezzled the money. It was held that while as between the institute and its customer the institute was liable, the bank was liable to the institute, although the money did not reach the cash drawer of the bank, but was embezzled by Barstow in his capacity as the bank's cashier. In *Smith v. Anderson*, 10 N. Y. S. 278, where plaintiff delivered moneys to the president of a bank to be deposited therein, and the latter, without plaintiff's knowledge or consent, deposited them in his own name as plaintiff's attorney, and afterwards appropriated a large part thereof to his own use, the bank was held liable, since it was chargeable with the knowledge possessed by its president. In 1 Michie on Banks and Banking, 789, there is a seeming qualification of this rule. He states it thus:

"Where a person occupying the position of managing officer of a bank receives moneys which are deposited in the bank, his knowledge will be treated as that of the bank, and it is liable to the depositor, even though such officer misappropriates the moneys. *If such officer converts the money without the bank having received it, and without credit being given on its books, it will not be liable.* [Italics ours.] But, when he receives funds which go into the bank, it is chargeable with all the knowledge possessed by him; otherwise those dealing with the bank would be without remedy in the case of fraud or misappropriation on the part of its managing officer."

Touching the qualifying language of this rule, that the bank is not liable if the officer converts the money without the bank having received it and without credit being given on its books, the author gives no citation supporting that qualification, and we would be hard put to formulate a hypothetical case which would not destroy the rule altogether if the qualification be conceded. If an officer of a bank were to stand at the receiving teller's window and stuff depositors' moneys into his breeches pockets as fast as they came over the counter, it seems preposterous to say that the bank would not be liable because the rogue at the teller's window made no entry on the books of the bank of the moneys so embezzled by him. Even when bank officers undertake to perform a service which is only incidental to their ordinary business of banking, the bank is liable. Thus where a bank through one of its officers undertook to have certain mortgages renewed in the order of their priority and intrusted the business to another bank which negligently performed it, it was held that the bank was liable. The court said:

"We think it was one within the powers of the appellant, incidental to its

ordinary business (*National Bank v. Presnall*, 58 Kan. 69, 48 Pac. 556); not differing greatly from many transactions which are undertaken every day by both national and state banks for the purpose not only of accommodating their bank correspondents and others, but for the incidental purpose of bringing business and good will to the bank itself. It constituted a bailment.

"'A very important part of the business of every bank, whether private or incorporated, consists of acting as an agent or bailee for its customers.' (Note on the subject of 'Care Required of Bankers Acting as Agents or Bailees,' 38 Am. St. Rep. 773.)" (*Bank v. Bank*, 106 Kan. 303, 308, 187 Pac. 697. See, also, *Bank v. Wilson*, 101 Kan. 72, 75, 165 Pac. 859.)

This court cannot discern the slightest analogy between the present case and *Hier v. Miller*, 68 Kan. 258, 75 Pac. 77; *Epley v. Bank*, 104 Kan. 489, 180 Pac. 187; or *State, ex rel., v. Thedford Bank*, 114 Neb. 534, cited and quoted by appellant.

The errors assigned on the entry of judgment for defendant and on the overruling of the motion for a new trial suggest nothing for discussion.

The foregoing disposition of the errors urged by appellant renders it unnecessary to consider the defendant's cross appeal.

The judgment is affirmed.