No. 29,150.

J. E. TREES, *Appellee*, v. CHARLES W. JOHNSON, as Receiver of The Citizens State Bank of Sabetha, and The Citizens State Bank of Sabetha, *Appellants*.

No. 29,151.

E. E. HOLLISTER, *Appellee*, v. CHARLES W. JOHNSON, as Receiver of The Citizens State Bank of Sabetha, and The Citizens State Bank of Sabetha, *Appellants*.

No. 29,152.

J. B. MEYER, *Appellee*, v. CHARLES W. JOHNSON, as Receiver of The Citizens State Bank of Sabetha, and The Citizens State Bank of Sabetha, *Appellants*.

No. 29,153.

M. E. ARICK, *Appellee*, v. CHARLES W. JOHNSON, as Receiver of The Citizens State Bank of Sabetha, and The Citizens State Bank of Sabetha, *Appellants*.

No. 29,154.

E. G. MILLS, *Appellee*, v. CHARLES W. JOHNSON, as Receiver of The Citizens State Bank of Sabetha, and The Citizens State Bank of Sabetha, *Appellants*.

(288 Pac. 587.)

Opinion filed June 7, 1930.

R. M. Emery, Jr., of Seneca, for the appellants.

W. E. Archer, of Hiawatha, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: These five cases are similar in their facts and involve identical legal questions. Plaintiffs sued the bank and its receiver for the amount of notes sold to them respectively by the bank, which notes were secured by a mortgage to the bank, which the bank was to hold for their benefit, and which mortgage the bank released by its president, since which time title to the mortgaged property has passed to innocent purchasers. At the time of the release of the mortgage the legal title to the real property was in the name of the president of the bank. The defense in these actions is that the release was not effective to discharge the mortgage. The trial court made findings of fact and conclusions of law and rendered judgment for plaintiffs. Defendants have appealed.

The pertinent facts may be summarized as follows: On March 1, 1921, Mary Ann Strahm, her son Matthias Strahm, and his wife Lena Strahm, were indebted to The Citizens State Bank of Sabetha in the sum of $34,400, and on that date they executed a series of twelve notes, in different sums, aggregating that amount. In October of that year the Strahms, to secure the payment of these notes, executed and delivered to the bank their mortgage on land owned by them in Nemaha county (subject to a prior mortgage of $17,000). The mortgage was duly recorded. In this mortgage the notes of March 1, 1921, were listed as to date, due date, amount and number. At the time the notes were executed the name of the payee was left blank, but the payee in each of the notes was, in fact, the bank. The Strahms renewed these notes March 1, 1922. The active managing officers of the bank appear to have been F. C. Woodbury, president; J. C. Lichty, cashier, and E. E. Morris, assistant cashier. The bank, through these officers, or some of them, sold some of the Strahm notes—to the plaintiff Trees, note No. 11 for $3,900; to the plaintiff Hollister, note No. 1 for $2,000 and note No. 8 for $2,000; to the plaintiff Meyer, note No. 6 for $3,000 and note No. 7 for $1,000; to the plaintiff Arick, note No. 12 for $4,000, and to plaintiff Mills, note No. 5 for $2,500. The names of the respective purchasers were inserted as payees of the notes. At the time of these respective sales the bank, by its president and cashier, represented to plaintiffs that the bank had good security for the notes sold, and it did in

fact have the mortgage given by the Strahms to the bank to secure the payment of the notes, and kept the same in trust for the benefit of plaintiffs and other holders of these notes. The land was of sufficient value to secure the notes. As it became due the bank paid the interest on the notes to the holders thereof, money for that purpose having been collected by the bank from the Strahms. On May 6, 1924, the Strahms conveyed the land described in the mortgage to F. C. Woodbury, J. C. Lichty and E. E. Morris, the grantees assuming the mortgages of record, which included the mortgage to the bank in the sum of $34,400. They appear to have paid nothing for this conveyance, but did give the grantors a repurchase agreement, which was later abandoned or surrendered. Lichty died, and in February, 1925, his widow and children, through their guardian, conveyed their interest in the land to F. C. Woodbury. Morris also executed a conveyance of his interest in the property to Woodbury. On February 24, 1926, The Citizens State Bank of Sabetha, by F. C. Woodbury, its president, released of record the mortgage which had been given to it by the Strahms. This was unknown to the plaintiffs, who were holders of the Strahm notes. Woodbury thereafter sold the land. The plaintiffs did not receive any of the proceeds of the sale. Whether the bank received the proceeds of the sale was not disclosed by the evidence. The bank failed March 22, 1928. Plaintiffs did not learn of the release of the Strahm mortgage until after the failure of the bank.

Appellants cite and rely on *Hier v. Miller*, 68 Kan. 258, 75 Pac. 77, and allied cases. These authorities are not in point. This is not an action by the bank to set aside the release of the mortgage and to hold the real property liable therefor. Neither is it an action against F. C. Woodbury for a wrongful release of the mortgage. As the court found the facts, a summary of which has been stated, the bank was the holder of the mortgage to secure the notes originally given to the bank, and which the bank had sold to the individual plaintiffs. As to these plaintiffs the bank was a trustee, holding security for their benefit. In such a situation the bank violated its trust by executing and recording this release without the knowledge or consent of the holders of the notes. Woodbury was president of the bank. Under the statute (R. S. 67-318) the release was valid, in form at least, when executed by the president of the bank and attested by its corporate seal, as was the release in this case. It is argued that the directors and officers of the bank

other than the president did not know that Woodbury had executed this release. The court made no finding on that point, and the most that can be said of the evidence is that some of the officers and directors did not know of it. The stockholders and directors of the bank had chosen Woodbury as its president, and are responsible for having placed him in a position in which he could execute a valid release of mortgages held by the bank. Plaintiffs had nothing to do with placing him in that position, or giving to him that authority. It is well settled that the holder of a mortgage or trust deed in trust for the benefit of the owners of notes secured thereby is liable to the holders of such notes for a wrongful release of the mortgage or trust deed. (41 C. J. 605, 607, 1035, 1036; 39 Cyc. 513; 26 R. C. L. 1321 *et seq.*)

The bank had authority to take mortgages on real estate (R. S. 9-101) and to deal in notes. The indebtedness was substantial in amount. The bank took a series of notes secured by the one mortgage. It sold these notes to various purchasers, retaining the mortgage as security for all of them, and thus became a trustee for the holders of the notes. As such trustee it was bound to the utmost good faith (*Morrow v. Comm'rs of Saline Co.*, 21 Kan. 484) to keep the mortgaged security intact, and is liable in damages for its failure to do so. (7 C. J. 597; *Bank v. Bank*, 106 Kan. 303, 187 Pac. 697; *Stone v. Bank*, 107 Kan. 332, 190 Pac. 1094; *Fulton v. Farmers N'at'l Bank*, 122 Kan. 400, 252 Pac. 242, 123 Kan. 1, 253 Pac. 561; *Book v. First Nat'l Bank*, 123 Kan. 304, 255 Pac. 68.)

The judgment of the trial court is in harmony with these authorities and must be affirmed. It is so ordered.